## CRABTREE et al. v. MADDEN.

(Circuit Court of Appeals, Eighth Circuit. February 20, 1893.)

No. 184.

1. CIRCUIT COURT OF APPEALS—JURISDICTION TO DETERMINE JURISDICTION OF LOWER COURTS.

The circuit court of appeals has jurisdiction to determine the jurisdiction of the United States court in the Indian Territory on a writ of error which brings up the whole case, whether the record presents the single question of such jurisdiction, or that with other questions. McLish v. Roff, 12 Sup. Ct. Rep. 118, 141 U. S. 661, followed.

2. UNITED STATES COURT FOR INDIAN TERRITORY—JURISDICTION.

The United States court in the Indian Territory has no jurisdiction, either under the act of March 1, 1889, (25 St. at Large, p. 783,) or the act of May 2, 1890, (26 St. at Large, p. 90,) to entertain an action for the collection of taxes imposed by the laws of the Creek tribe of Indians upon citizens of the United States residing in such territory.

3. TAXATION—NATURE OF TAX.

A tax is not a debt, and does not rest upon any contract, express or implied, but is imposed by the legislative authority without regard to the will of the individual taxed.

In Error to the United States Court in the Indian Territory. Affirmed.

Statement by SANBORN, Circuit Judge:

This is a writ of error to reverse a judgment sustaining a demurrer to a complaint and dismissing an action brought in the United States court in the Indian Territory by the Creek tribe of Indians and William F. Crabtree, as their national tax collector, plaintiffs in error, against William A. Madden, the defendant in error, to collect a tax imposed on him by that tribe. The allegations of the complaint are that William F. Crabtree is a member and the national tax collector of the Creek tribe of Indians, and that it is his duty to collect all the taxes due the tribe; that William A. Madden is not a member of the tribe, but is a citizen of the United States, who resides in the tribe, and carries on the business of a builder of houses and manufacturer of furniture as a licensed trader therein; that an annual tax of $200 is imposed by law for the use of the tribe upon all persons not members thereof who do the business of licensed traders therein, and that the defendant has conducted his business in the tribe for a year, and refuses to pay the tax. The prayer of the complaint is for a judgment for the amount of the tax. Three grounds of demurrer were stated: That the complaint did not state facts sufficient to constitute a cause of action; that the court had no jurisdiction of the subject-matter or the parties; and that the plaintiff had no legal capacity to sue. In this court the defendant in error moved to dismiss the writ on the ground that the only question presented by the record is the question of the jurisdiction of the court below, and that the jurisdiction of the supreme court of the United States to review that question is exclusive.

George E. Nelson, for plaintiffs in error.

N. B. Maxey, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Two principal questions are presented by this record: Has this court jurisdiction to review the judgment below? and has the United States court in the Indian Territory jurisdiction to entertain an

action for, and to enforce by its judgment the collection of, a tax imposed by a tribe of Indians residing in that territory, upon a citizen of the United States residing in the tribe?

As to the first question, section 13 of the act of March 3, 1891, creating the circuit courts of appeals, (26 St. p. 826,) provides that writs of error may be taken and prosecuted from the decision of the United States court in the Indian Territory to the supreme court of the United States or to the circuit court of appeals in the eighth circuit, in the same manner and under the same regulations as from the circuit or district courts of the United States under that act. Section 5 of the act provides that appeals or writs of error may be taken from the district courts or the existing circuit courts direct to the supreme court in six classes of cases, one of which is "in any case in which the jurisdiction of the court is in issue. In such cases the question of jurisdiction alone shall be certified to the supreme court from the court below for decision." Section 6 of the same act provides that the circuit court of appeals shall "exercise appellate jurisdiction to review by appeal or by writ of error final decision in the district court and the existing circuit courts in all cases other than those provided for in the preceding section, unless otherwise provided by law."

The contention of counsel for defendant is that the jurisdiction of the court below is the only question in issue in this case; that the supreme court has exclusive jurisdiction to hear and determine that question under section 5, and hence this court has no jurisdiction to consider it. It is proper to notice that this is a writ of error to review a final judgment; that it brings up the entire case; and that, if this court was of the opinion that the court below had jurisdiction of the subject-matter and the parties, there would remain for determination the question whether or not the complaint states facts sufficient to constitute a cause of action; so that it can hardly be said that the question as to the jurisdiction of the court below is the only question here in issue. But if it was, and the question was clearly presented whether or not this court has jurisdiction to determine that question when a writ of error or appeal from a final judgment or decree, which brings up the whole case, presents to this court the single question of the jurisdiction of the court below, the decision of the supreme court has settled that question adversely to the contention of the defendant. In McLish v. Roff, 141 U. S. 661, 668, 12 Sup. Ct. Rep. 118,—a case from the United States court in the Indian Territory,—in which all the provisions of the act creating this court that are material in this case were carefully considered, that court declared the right and privilege of the defeated party upon the entry of a final judgment in the court below to be as follows:

"When that judgment is rendered, the party against whom it is rendered must elect whether he will take his writ of error or appeal to the supreme court upon the question of jurisdiction alone, or to the circuit court of appeals upon the whole case. If the latter, then the circuit court of appeals may, if it deem proper, certify the question to this court."

The result is that when the party against whom a final judgment has been rendered in a district or circuit court of the United

States elects to take his writ of error to a circuit court of appeals upon the whole case, that court has jurisdiction to determine it, whether the question of the jurisdiction of the court below is the sole question or but one of many questions in issue under the writ. The plaintiffs in error have made their election to take their writ of error to this court upon the whole case, and the motion to dismiss the writ is denied.

The second question is whether the court below had jurisdiction of this action. The plaintiff Crabtree had no better right to maintain the action than the Creek tribe of Indians. The complaint alleges that the tax was imposed for the use of the tribe, and that Crabtree was its collector, hence he was not the real party in interest in the action; and, if the tribe could not maintain it, he could not, because he had no right he did not derive from the tribe. The connection of Crabtree with the case will not, therefore, be further noticed, and the only question is, can a tribe of Indians residing in the Indian Territory maintain an action in the federal court in that territory to collect a tax imposed by the tribe upon a citizen of the United States who resides therein? Before the jurisdiction of that court to entertain such an action can be maintained, two propositions must be clearly established: First, that congress has granted to the court below the authority to entertain and determine actions of this character, because that court, in common with all the federal courts, is limited in its jurisdiction to the cases and proceedings which congress has granted it authority to consider and act upon; and, second, that the Creek tribe of Indians has expressly or by clear implication prescribed an action at law in the federal court as the method of enforcing the tax here in question.

The limits of the jurisdiction conferred by congress on the court below are prescribed by the acts of March 1, 1889, (25 St. p. 783, c. 333, § 6,) and of May 2, 1890, (26 St. p. 93, c. 182, § 29.) So far as it is material here, the former act provides "that that court shall have jurisdiction in all civil cases between citizens of the United States who are residents of the Indian Territory, or between citizens of the United States, or of any state or territory therein, and any citizen of or person or persons residing or found in the Indian Territory, and when the value of the thing in controversy or damages or money claimed shall amount to one hundred dollars or more." The latter act, so far as it is material to the determination of this question, provides that that court, in addition to the jurisdiction conferred thereon by the former act, shall "have and exercise within the limits of the Indian Territory jurisdiction in all civil cases within the Indian Territory, except cases over which the tribal courts have exclusive jurisdiction; and in all cases on contracts entered into by citizens of any tribe or nations with citizens of the United States in good faith and for valuable consideration, and in accordance with the laws of such tribe or nation, and such contracts shall be deemed valid and enforced in said courts." The law of the Creek tribe under which this tax was imposed is not set forth in the complaint, nor is there any allegation therein tending to show what remedies for its collection the laws of the tribe have prescribed. The Creek tribe of Indians is a dependent domestic nation. It is a distinct

political society, capable of managing its own affairs and governing itself. As such a nation the United States has maintained treaty relations with it for more than a century. By the treaty of March 24, 1832, (7 St. p. 368, art. 14,) between the United States and that tribe, it was stipulated that "the Creek country west of the Mississippi shall be solemnly guarantied to the Creek Indians; nor shall any state or territory ever have a right to pass laws for the government of such Indians, but they shall be allowed to govern themselves so far as may be compatible with the general jurisdiction which congress may think proper to exercise over them." By the treaty of August 7, 1856, (11 St. p. 703, art. 15,) it was stipulated that, "so far as may be compatible with the constitution of the United States and the laws made in pursuance thereof, regulating trade and intercourse with the Indian tribes, the Creeks and Seminoles shall be secured in the unrestricted right of self-government, and full jurisdiction over persons and property within their respective limits, excepting, however, all white persons, with their property, who are not, by adoption or otherwise, members of either the Creek or Seminole tribe; and all persons not being members of either tribe, found within their limits, shall be considered intruders, and be removed from and kept out of the same by the United States agents for said tribes respectively, (assisted, if necessary, by the military,)" with the exception of certain classes of persons, one of which is, "all persons peaceably traveling or temporarily sojourning in the country, or trading therein under license from the proper authority of the United States."

By the treaty of June 14, 1866, (14 St. p. 788, art. 10,) it was stipulated that "the Creeks agree to such legislation as congress and the president of the United States may deem necessary for the better administration of justice and the protection of the rights of person and property within the Indian Territory: provided, however, [that] said legislation shall not in any manner interfere with or annul their present tribal organization, rights, laws, privileges, and customs." The act of May 2, 1890, enlarging the jurisdiction of the court below, recognizes the existence and exclusive jurisdiction in some cases of the tribal courts and the validity of contracts made according to the laws of the tribe. These treaties and this legislation demonstrate that this tribe has carefully preserved its separate political identity, and that it is still managing its own affairs, and exercising, through officers of its own selection, legislative, executive, and judicial functions within its territorial jurisdiction. The tax which it is sought to collect by this action was imposed by the laws of this tribe. If the tribe had lawful authority to impose it, it had equal power to prescribe the remedies and designate the officers to collect it. The presumption is that it has done so, and that it has provided some of the remedies usually prescribed for that purpose. It is seldom that an action at law is authorized for the collection of a tax, and the general rule is that, where remedies are provided, and such an action is not named as one of them, a common-law action to recover the tax will not lie, even in the courts of the sovereignty which imposed them, much less in the courts of another state. Meriwether v. Garrett, 102 U. S. 472, 515; Peirce v. Boston, 3 Metc. (Mass.) 520;

City of Faribault v. Misener, 20 Minn. 396, (Gil. 347;) Cooley, Tax'n, p. 16, note 3.

Thus in Meriwether v. Garrett, supra, Justice Field, in speaking of the jurisdiction of the federal court to enforce the collection of taxes that had been levied under a state law through its receivers, as compared with the power of the legislature of the state to provide a different method for their collection through its ministerial officers, said:

"In the distribution of the powers of government in this country into three departments the power of taxation falls to the legislative. It belongs to that department to determine what measures shall be taken for the public welfare, and to provide the revenues for the support and due administration of the government through all its subdivisions. Having the sole power to authorize the tax, it must equally possess the sole power to provide the means by which the tax shall be collected and to designate the officers through whom it will be enforced."

And in Peirce v. Boston, the supreme court of Massachusetts, speaking of taxes imposed in that commonwealth, said:

"They do not partake of the nature of judgments. The imposition and collection of them are ministerial acts, and are the proper subjects of inquiry as to the measure of their assessment and the mode of their enforcement in the judicial forum; and for the collection of them no right of action is given, (with a few special exceptions, growing out of the death of parties, or their removal out of the collector's precinct, or on the marriage of females,) nor can they be turned into judgments."

An action at common law, then, is not the usual method of enforcing the collection of a tax, even in the courts of the sovereignty imposing it. Nor is it generally the province of the courts of one state to enforce the revenue laws of another. If they sometimes do so, it is in rare cases, from the necessity of the case, and on the principle of international comity. The statement is frequently found in the books that the revenue laws of one state are without force in another, and, if that statement is too general, it seems to be well settled that such laws have not sufficient force in the courts of a foreign state to prevent the enforcement in those courts of contracts there made to be performed in a neighboring sovereignty in violation of those laws. Bish. Cont. § 1387, note 1, and cases cited.

If the court below has jurisdiction of this class of actions it must necessarily construe, determine the effect of, and eventually draw to itself the controlling power over the enforcement of the laws of the Indian tribes within its territorial jurisdiction relating to the taxes and revenues of those nations imposed on and derived from persons not members of the tribes. If it has this jurisdiction, the extraordinary spectacle will be presented of a political society, authorized to impose taxes for the support of its government and the protection of its subjects, appealing to the courts of another sovereignty to enforce the collection of its taxes against persons and property within its own territory. The diligence of counsel has called our attention to no case, nor have we been able to discover any, that forms a precedent for such an anomaly.

Chief Justice Marshall, speaking for the supreme court in Cherokee Nation v. State of Georgia, 5 Pet. 1–20, where he stated that these Indian tribes might be called "domestic dependent nations,"

and that they were capable of governing themselves and managing their own affairs, declared that they were not foreign nations or states in the sense of the constitution, and that they could not, as such, maintain actions in the federal courts. The federal courts have no general power to enforce the revenue laws of the states and municipalities within their territorial jurisdiction. They exercise such power only in cases in which it is expressly granted to them, or impliedly given, because it is necessary to the enforcement of their judgments. Cooley, Tax'n, 744. In the acts granting jurisdiction to the court below there is no express grant of authority to entertain actions or proceedings instituted by the Indian tribes to enforce the collection of their taxes. It seems incredible that congress could have intended to confer upon that court a jurisdiction so unusual, so unprecedented, without clearly expressing that intention.

The considerations to which we have adverted, and especially the conviction that, if congress had intended to confer on the court in the Indian Territory a jurisdiction so extraordinary in its character and so far-reaching in its effects as that here claimed, it would not have failed to clearly and unmistakably express that intention, have forced us to the conclusion that it never did intend to confer that jurisdiction. Nor do we find in this case any foundation on which to base the conclusion that the Creek tribe itself has either expressly or by implication prescribed or consented to so unique a method of enforcing its revenue laws.

The counsel for plaintiffs attempts to escape from this conclusion by the argument that this tax is a debt; that it arises upon an implied contract; that the court has jurisdiction to enforce such contracts, and hence of this action. This position is not tenable. Taxes are not debts. They do not rest upon contract, express or implied. They are imposed by the legislative authority without the consent and against the will of the persons taxed, to maintain the government, protect the rights and privileges of its subjects, or to accomplish some authorized, special purpose. They do not draw interest, are not subject to set-off, and do not depend for their existence or enforcement upon the individual assent of the taxpayers. Meriwether v. Garrett, 102 U. S. 472, 513; Lane County v. Oregon, 7 Wall. 71, 80; In re Duryee, 2 Fed. Rep. 68; Peirce v. Boston, 3 Metc. (Mass.) 520; Perry v. Washburn, 20 Cal. 318; Webster v. Seymour, 8 Vt. 135, 140; Johnson v. Howard, 41 Vt. 122, 125.

The claim that the authority of the interior department and the Indian agents to remove from the territory of the Indian tribes licensed traders who refuse to pay taxes lawfully levied upon them by the tribes, and thus to enforce their payment, which was exercised before the establishment of the court below, has been withdrawn, because jurisdiction was conferred upon that court to enforce the collection of such taxes, is unfounded, because no such jurisdiction was conferred upon that court, and the remedy for the enforcement of lawful taxes through the Indian agents remains in the same condition in which it was before that court was created. In addition to this, every licensed trader is required by section 2128, Rev. St., to give a bond, conditioned that he "will faithfully observe

all laws and regulations for the government of trade and intercourse with the Indian tribes, and in no respect violate the same."

• Our conclusion is that the court below had no jurisdiction of this action, and the judgment below is affirmed, with costs.