## In re WILLIAM F. FISHER & CO.

(District Court, D. New Jersey. September 13, 1906.)

1. BANKRUPTCY—RESALE OF PROPERTY—CONSTRUCTION OF ORDER.

Orders of a court of bankruptcy setting aside a private sale of a bankrupt's real estate, and requiring the petitioner therefor to enter into a contract with the trustees to bid a stated sum at a resale, and also sufficient in addition to pay whatever sum should be awarded by the court to the former purchaser for improvements made on the property, construed, and *held* to require such award to be paid by the trustees where at the resale the petitioner purchased the property at a price largely in excess of that which it was required to bid by the order.

2. SAME—ALLOWANCE TO FIRST PURCHASER FOR IMPROVEMENTS MADE—COSTS OF TAKING ACCOUNT.

Where a private sale of real estate of a bankrupt was set aside by the court on an offer of a better price after the purchaser had made improvements thereon by an order which provided that he should be repaid the amount expended in making such improvements, he should not be charged with the costs of the proceedings for ascertaining the amount so expended, but such costs should be paid by the estate which benefited by the resale.

3. SAME—TAXES ON PROPERTY PENDING ADMINISTRATION.

It is the duty of a trustee in bankruptcy under Bankr. Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], to pay the taxes assessed or becoming due on the property of the bankrupt while in his hands for administration, and he is not relieved from such duty by the fact that the taxes were allowed to remain unpaid until the property was sold, by consent of the court of bankruptcy, under a decree of foreclosure in a state court; but there is no provision of the law requiring or authorizing him to pay interest thereon.

In Bankruptcy. On petition of the Sayre & Fisher Company. See 135 Fed. 223.

J. K. Rice and W. R. Schenck, for the Sayre & Fisher Company. George Silzer, for Joseph Allgair. Robert Adrain, for bankrupt's trustees.

LANNING, District Judge. This proceeding brings before the court three questions: First, who shall pay to Joseph Allgair the amount due to him for the cost of improvements upon the lands of the bankrupt; second, who shall pay the costs incurred in the proceedings for ascertaining the amount due to Joseph Allgair; and, third, who shall pay the taxes assessed against the bankrupt's real estate for the years 1902, 1903, and 1904.

On July 7, 1905, the Sayre & Fisher Company filed its petition, praying that the private sale of the bankrupt's real estate made by the bankrupt's trustees to Joseph Allgair on June 15, 1905, for $55,000, be set aside, and offering, if an order to that effect should be made, to deposit security that it would at a public sale offer $60,000 therefor. On July 8th the Sayre & Fisher Company filed a supplemental petition, stating that, if the private sale should be set aside, it, "in addition to its bid of $60,000 for the said property and plant, will repay to the said purchaser of the said property, if the Sayre & Fisher Company shall be the successful bidder for the same, the moneys actually expended by him in improvements placed upon said plant since he became

the purchaser thereof at the private sale heretofore made by the trustees of the said bankrupt as shall be decided by the court." On July 24, 1905, the Sayre & Fisher Company having deposited security in the sum of $60,000, this court, for the reasons in its order of that date stated, set aside the private sale to Joseph Allgair and directed the trustees to resell the property "at public auction to the highest bidder, free and discharged of and from all incumbrances, at a price not less than the sum of $60,000, and, in addition thereto, such sum of money as a judge of this court shall determine that the said Joseph Allgair is lawfully and equitably entitled to have refunded to him, if any, for disbursements made by him on account of or by reason of his said purchase, and also for moneys actually expended by him in making improvements, if any, to the said property since he obtained the possession thereof under and by virtue of the sale of said property to him by said trustees, which sale is, upon review, now by this court vacated, set aside, and for nothing holden, due allowance in estimating said amount to be paid said Joseph Allgair as aforesaid first being made for any waste or depreciation of or to said property, land, and premises, made or done by said Joseph Allgair, his servants, agents or employés, since he, said Joseph Allgair, took possession thereof as aforesaid, until he, said Joseph Allgair, shall surrender, as herein ordered, to said trustees all the said lands, property and estate which so came into his possession as aforesaid."

Immediately after the making of the above order Joseph Allgair took an appeal therefrom to the Circuit Court of Appeals, and on July 31, 1905, he appeared in this court, and offered to place the property in the possession of the bankrupt's trustees, on terms not necessary now to be stated, to be held by the trustees pending the appeal, which offer was accepted. There were at that time two mortgage incumbrances upon the bankrupt's property, the first for $24,000, with accrued interest, and the second, which had been foreclosed in the New Jersey Court of Chancery and merged into a final decree, for something over $15,000. Sale under the execution issued upon this decree had long been stayed by this court. Feeling that the stay ought not to be continued during the pendency of the appeal above mentioned, an order vacating the stay was signed on August 14, 1905. As the making of this order rendered it possible for the complainant in the foreclosure case to sell the property under the execution issued in that case, and thereby defeat the purpose of the order of July 24, 1905, which was to secure a sale of the property for a larger sum than $55,-000, another order, dated back to July 31, 1905, the terms of which were agreed to by the Sayre & Fisher Company, was made, containing the following provisions:

"And it is further ordered that the Sayre & Fisher Company shall enter into an agreement to and with said trustees in bankruptcy herein, said corporation having been duly authorized by resolution of its board of directors, therein and thereby agreeing and undertaking to bid for said property the sum of at least sixty thousand dollars and, in addition thereto, such sum of money as this court shall determine that the said Joseph Allgair is lawfully and equitably entitled to have refunded to him, if any, for disbursements made by him on account of or by reason of his purchase, and for moneys actually expended by him in making permanent improvements to the said property,

since he obtained the possession thereof under and by virtue of the sale of said property to him by said trustees, and also, in addition thereto, the interest upon two mortgages, one now or lately held by the National Bank of New Jersey of New Brunswick, in the sum of twenty-four thousand dollars, and the other now or lately held by the Empire State Trust Company in the amount secured to that company by the final decree of the Court of Chancery in foreclosure proceedings, wherein said company was complainant and the bankrupt herein and others were defendants, which interest is to be calculated from the day of the date of the sale to said Joseph Allgair, to wit, the 15th day of June, 1905, up to the day when the deed shall be delivered to the purchaser on a sale of said plant under any writ of execution heretofore issued or that may hereafter be issued upon said final decree, provided such sale shall take place prior to a resale of the said property and estate by the trustees in bankruptcy herein, and prior to the final determination by a superior court of the petition of review heretofore filed as aforesaid by said Joseph Allgair. Said bid shall be subject to the lien of a first mortgage dated October 17, 1901, for the sum of $24,000, now or lately held by the National Bank of New Jersey, the principal sum of which with accrued interest shall be credited upon said bid and the balance of said bid shall be paid in cash. And it is further ordered that said Sayre & Fisher Company shall in and by their agreement so to be made with the said trustees as aforesaid undertake and agree in like manner to bid for said property the sum of at least $60,000, and such additional sums, if any, to be determined by this court as aforesaid, together with the interest on said two mortgages respectively, for the aforesaid property if and when the same shall be sold at a valid sale under and by virtue of a valid final decree or judgment of any court of competent jurisdiction under any proceedings had and taken in any such court by any lienor other than the Empire State Trust Company, having a valid and subsisting lien on the aforesaid property and estate, provided such last-mentioned sale shall take place prior to a resale of the said property and estate by the trustees in bankruptcy herein. And it is further ordered that if, before said Allgair's said petition of review shall have been finally determined by the said superior court, a sale of said bankrupt's estate shall be had or made under any execution issued upon the aforesaid final decree of the Court of Chancery of New Jersey, or if a sale thereof be had or made by virtue of a suit instituted by any other lienor as last aforesaid, and if at any such sale the said Sayre & Fisher Company or any other party should be the purchaser thereof upon a bid of $60,000, including the additional sums as aforesaid, determined by this court as aforesaid, and the interest on said first mortgage and on said decree as aforesaid, then and in such case and upon said additional sum so paid coming into the hands of the said trustees herein, the said trustees shall, in the event of the superior court vacating the petition of review had and taken by the said Joseph Allgair and affirming the order of the judge of this court heretofore made on the 24th day of July, 1905, pay to the said Joseph Allgair such sum as shall have been received upon said bid from the purchaser thereof for the improvements and other moneys expended by the said Joseph Allgair upon the said plant, allowance having been made for waste, as determined by a judge of this court as hereinbefore provided. The moneys which the said trustees shall have received from such successful bidder as and for the interest upon the first mortgage upon said property, and as and for the interest upon the decree of foreclosure of the mortgage now or lately held by the Empire State Trust Company, they shall pay to the respective mortgagees or the assigns of such mortgagees, the amount of interest due each of them upon the said mortgages, so far as the said moneys paid to them as interest will permit them to do."

On September 5, 1905, the Sayre & Fisher Company entered into a written agreement with the trustees of the bankrupt, substantially, in the form prescribed by the order of July 31, 1905, which agreement was accepted by the trustees.

The appeal taken by Joseph Allgair has now been disposed of, and the order of July 24, 1905, affirmed. While the appeal was pending,

the property was sold under the execution issued upon the final decree of the Empire State Trust Company to the Sayre & Fisher Company for $54,000, subject to the lien of the first mortgage. The resale was a highly advantageous one for the creditors of the bankrupt. The trustees are now in possession of all of the purchase money to which they are entitled or which they claim; but their counsel insists that it is the duty of the Sayre & Fisher Company, the purchasers of the property at the resale, and not of the trustees, to pay to Joseph Allgair the sum due to him, which prior to the resale had been judicially ascertained to be the sum of $3,553.41. The counsel for the Sayre & Fisher Company, on the other hand, insist that the payment should be made by the trustees. The decision of the question rests wholly upon the construction that should be given to the two orders of July 24 and July 31, 1905. These orders are not expressed in very elegant English, but their meaning is clear. By the first order the trustees were directed to resell the property for not less than $60,000, plus such sum as this court should thereafter decide Joseph Allgair should have for the improvements put upon the property by him. This order contemplated a sale by the trustees only. If a sale had been made under it, the whole of the purchase money would have been paid to the trustees, and it would have been their duty to pay to Joseph Allgair, out of the purchase money received by them, the amount awarded to him. By the second order (the one of July 31st) the Sayre & Fisher Company was required to enter into an agreement with the bankrupt's trustees (1) "to bid," at any sale of the property made while the above-mentioned appeal should be pending and before the bankrupt's trustees could sell, the sum of at least $60,000, plus whatever this court should thereafter decide Joseph Allgair should have for his improvements, and plus, also, the interest on the two mortgages from June 15, 1905, to the date of the delivery of the deed; (2) "to bid," at any sale of the property, under proceedings by any lienor other than the holder of the second mortgage, and before the bankrupt's trustees could sell, at least $60,000, plus the amount that might be awarded to Joseph Allgair, and plus, also, the interest on the two mortgages as above mentioned; and (3) that if it, the Sayre & Fisher Company, should become the purchaser under either of these two conditions, the bankrupt's trustees should pay to Joseph Allgair the amount due to him, and to the holders of the two mortgages the sums due to them for interest for the specified periods. The primary object of the agreement of September 5th was not to secure a fulfillment of the terms of the order of July 24th, the fulfillment of which had already been secured by a deposit by the Sayre & Fisher Company of their certified check for $60,000, but to secure the fulfillment of the terms of the order of July 31st. While the language of the agreement is in some respects somewhat obscure, its meaning is made clear by its express declaration that it shall be construed in connection with the two orders of July 24th and July 31st. The first of these orders, as already stated, deals with a sale by the bankrupt's trustees, while the second deals with a sale during the pendency of the appeal, when the trustees could not sell, under the foreclosure or other judicial proceedings. The agreement must, therefore, be read in the

light of these facts. If the sale should be made by the trustees under the provisions of the first order, the trustees were to pay to Joseph Allgair out of the purchase money the amount awarded to him. And, if it should be made in some other judicial proceeding during the pendency of Allgair's appeal, and before the trustees should have the right to sell, the trustees were to pay out of the surplus moneys coming to them the amount awarded to Joseph Allgair. The conclusion, therefore, is that the bankrupt's trustees should now pay to Joseph Allgair the amount due to him. That amount is $3,553.41. He is also entitled to interest thereon from October 23, 1905, being the date of the adjudication of the amount due.

A second question is, Who shall pay the costs of the proceedings for ascertaining the amount due to Joseph Allgair? The order of July 31st provided, as did the order of July 24th setting aside the sale to Allgair, that he should have repaid to him his expenses for improvements, and the Circuit Court of Appeals (see Allgair v. Fisher & Co., 143 Fed. 964) declared that this provision was not in any respect erroneous. In my judgment, therefore, the purpose of that order should not be impaired by imposing upon Allgair any part of the costs of the proceedings for ascertaining the amount of those expenses, except that he should pay for the copy of the testimony furnished to his counsel. The Sayre & Fisher Company was successful on its petition to have the sale to Allgair set aside. It agreed to bid for the property on a resale the sum of at least $60,000, plus the amount that should be awarded to Allgair. It did so. In fact, it bid for the property a sum much in excess of what it was bound to do by its agreement entered into with the court when the order of July 31st was made. As the proceedings for determining the amount due to Allgair were had before the resale at which the Sayre & Fisher Company became the purchasers of the property, that company was interested in the question as to what the adjudication in favor of Allgair should be. It was therefore properly represented by counsel in those proceedings, and ought not to be charged with any of the costs of the proceedings, except for the cost of a copy of the testimony furnished to its counsel. In those proceedings Medora Fisher and other creditors, who had joined in the prayer that the private sale to Allgair should be set aside, were also represented by counsel. They should not be charged with any part of the costs of the proceedings, except the cost of the copy of the testimony furnished to their counsel. The residue of the costs should be paid by the bankrupt's trustees, who, as the representatives of the bankrupt's creditors, have so greatly profited by the resale.

The third question is, Who shall pay the taxes for the years 1902, 1903, and 1904? If the sale had been made under the terms of the order of July 24th, it is not disputed that they would have been paid by the bankrupt's trustees; for that order required the sale to be made "free and discharged of and from all incumbrances." But it was not made under that order nor under any other order of this court. It was made under an execution issued out of the Court of Chancery of New Jersey in the foreclosure proceedings instituted by the Empire State Trust Company. The purchase price, in the event of a sale under such execution, it was known would be paid to the sheriff of

the county of Middlesex, and become subject to the order of the Court of Chancery of New Jersey, and that only the surplus remaining in the sheriff's hands after satisfying the complainants in the foreclosure proceedings would be paid over to the bankrupt's trustees. By the order of July 31st the trustees were therefore expressly authorized and directed to pay out of such surplus moneys the amount that should thereafter be awarded to Allgair and the interest that should accrue on the two mortgages, or, rather, on the first mortgage and the Empire State Trust Company's final decree, from June 15, 1905, until the delivery of the sheriff's deed. Nothing was said in this order about the payment of taxes. But the petition against the William F. Fisher Company praying that it might be adjudicated bankrupt was filed in this court on October 7, 1902. The taxes assessed for that year did not become demandable by the township authorities until December 20th, more than two months after the institution of the bankruptcy proceedings. It follows, then, that the taxes for the three years in question became due and payable, and for 1903 and 1904 were assessed, after the beginning of the bankruptcy proceedings. There was no method by which the township authorities could enforce collection of these taxes by a sale of the property, for that property was in custodia legis. While taxes are not, in a strict sense, debts, they are so denominated in the bankruptcy act. Section 17 of that act (Act July 1, 1898, c. 541; 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]) is as follows:

"Debts Not Affected by a Discharge.—A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as (1) are due as a tax levied by the United States, the state, county, district or municipality in which he resides," etc.

Section 64, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], is as follows:

"Debts Which Have Priority.—The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality in advance of the payment of dividends to creditors," etc.

And section 1, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419], declares that the word "debt" shall include any debt, demand, or claim provable in bankruptcy. Of course, a tax is provable in bankruptcy. It thus appears that taxes legally due and owing by the bankrupt must be paid before distribution to creditors, and the injunction of section 64 is that the court "shall order" the trustee to pay them. It seems to be the duty of the court to require such payment, even though no claim for the same shall have been presented in the manner or within the time prescribed by the bankruptcy act for the filing of claims. It is true that section 64 does not, in express words, refer to taxes assessed or becoming due after the institution of bankruptcy proceedings. But it is settled law that the bankrupt's estate is taxable while it is in the hands of the bankrupt's trustees. In Swarts v. Hammer, 120 Fed. 256, 56 C. C. A. 92, the Circuit Court of Appeals for the Eighth Circuit held that a federal court will always order and direct the payment of taxes duly assessed on property in the possession of its officers, and treat the same as a preferred claim against the estate or fund which

is in process of administration. And this cause was affirmed by the United States Supreme Court, which declared that, where Congress has the power to exempt property from taxation, the intention must be clearly expressed, and that no such intention is discoverable in our present bankruptcy act. See 194 U. S. 441, 24 Sup. Ct. 695, 48 L. Ed. 1060. It thus appears that it was the duty of the bankrupt's trustees to pay the taxes assessed for each of the years 1902, 1903, and 1904. If they had paid these taxes, the court could not have denied them credit in their accounts, even though the property were afterwards sold under an execution issued out of a state court, nor even if it had been sold for a sum insufficient to repay them for the disbursements thus made. The fact is, however, that no such condition exists. The trustees have ample funds out of which to pay the taxes. The legal duty to do so was not discharged when this court merely withdrew its injunction staying sale in the foreclosure proceedings, nor were they relieved from that liability by the mere fact that the order of July 31st was silent on the subject of the payment of the taxes. The duty of payment being fixed on them by law, they can only be discharged by actual payment or by a legal agreement with the purchaser of the property at the sheriff's sale by which that purchaser assumed payment. There is no such agreement, and this court is without the power to relieve the trustees from the obligation imposed on them. They must therefore pay the taxes. It should be noted, however, that section 64 of the bankruptcy act does not provide for the payment of interest on taxes, and the order will therefore be simply that the trustees pay the amount of the taxes without interest.

A fourth question has also been presented. Shortly after the purchase of the property by the Sayre & Fisher Company its certified check for $60,000 was delivered up to it, and another certified check for $5,000 was deposited by it with George T. Cranmer as security for any sums that this court should, in deciding the questions above mentioned, conclude were chargeable against it. As by the decision above stated it is charged only with the cost of a copy of the testimony furnished to its counsel, the check for $5,000 should be returned to the Sayre & Fisher Company upon the payment of the amount due for the copy of the testimony delivered to its counsel, and upon the expiration of the time limited for the bankrupt's trustees to take an appeal from the order made hereon, or, if an appeal be taken by said trustees, then upon the determination of that appeal, and the payment to Allgair of all moneys that the appellate court may require the Sayre & Fisher Company to pay.

It may also be returned at any time within the period limited for taking an appeal, provided the bankrupt's trustees shall deliver to George T. Cranmer a written statement that they do not intend to prosecute any appeal, and provided that the Sayre & Fisher Company shall first pay the cost of the copy of the testimony delivered to its counsel.