### In re BREZIN et al.

(District Court, D. New Jersey. January 25, 1924.)

1. **Bankruptcy ⬉346—Federal taxes held provable against bankrupt's estate more than year after adjudication.**

Under Bankruptcy Act, § 64a (Comp. St. § 9648), giving federal taxes priority over bankrupt's debts without mentioning any limitation of time, the United States was entitled to present a claim for taxes more than one year after the adjudication, notwithstanding section 57n, providing that claims shall not be proved against bankrupt's estate subsequent to one year after adjudication, in view of the rule that a sovereign cannot be bound by a statute of limitations in which it is not named.

2. **Bankruptcy ⬉346—That bankrupt partners left profits in business held not to defeat government's claim for individual taxes.**

Under the Revenue Acts of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.) and of 1921 (Comp. St. Ann. Supp. 1923, § 6336⅛a et seq.), where partners, instead of drawing out their distributed shares of the profits, as they had the right to do, left them in the business, such individual moneys were not changed into partnership assets in the hands of bankruptcy trustees available to the payment of partnership creditors so as to defeat the government's right to priority as to taxes against the partners, under Rev. St. § 3466 (Comp. St. § 6372), and Bankruptcy Act, § 64a (Comp. St. § 9648).

3. **Bankruptcy ⬉346—"Taxes" are not debts, but imposts levied for support of government.**

The government's claim against bankrupt's estate for "taxes" is not to be classed with a creditor's claim for the payment of an ordinary debt, for "taxes" are not debts, but imposts levied for the support of the government.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tax-Taxation.]

4. **Internal Revenue ⬉7—Loss in 1920 not deductible from return of income for three preceding years.**

Under Revenue Act 1918, § 204 (Comp. St. Ann. Supp. 1919, § 6336⅛cc), under which, in computing the income tax, the only business loss which might be deducted was a loss occurring after October 31, 1918, and before January 1, 1920, a loss occurring in 1920 could not be charged against the income of the previous three years, but was only deductible from a return of income for 1920.

In Bankruptcy. In the matter of Walter Brezin and another, individually and as partners, trading as Brezin & Schaefer, bankrupts.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On petition to review referee's order. Reversed in part, and affirmed in part.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Charles P. Hutchinson, Asst. U. S. Atty., of Trenton, N. J. (Russell N. Shaw, Special Atty. Bureau of Internal Revenue, of Washington, D. C., of counsel), for the United States.

Bilder & Bilder, of Newark, N. J. (David H. Bilder, of Newark, N. J., of counsel), for trustee.

RUNYON, District Judge. The essential facts herein are as follows: Walter Brezin and Hugo Schaefer were partners trading as Brezin & Schaefer, and engaged in silk manufacture in Paterson, N. J., during the years 1917, 1918, 1919, and a portion of 1920.

In December, 1920, as the result of an involuntary petition filed against said partners, both as individuals and as partners, they were adjudicated bankrupts. On April 28, 1922, Frank C. Ferguson, collector of internal revenue for the Fifth district of New Jersey, filed a proof of claim with the referee in bankruptcy for taxes claimed to be due from the bankrupts to the United States. Thereafter, on May 31, 1922, he filed another claim for additional and further taxes, and on September 21, 1922, still another amended and corrected proof of claim for the sum total of the two prior claims. This claim, in short, was as follows: Against Brezin & Schaefer, additional taxes for the fiscal year ending June 30, 1917, and the ensuing period ending January 1, 1918, aggregating $1,232.01; against Walter Brezin, unpaid and additional taxes for the years 1917, 1918, and 1919, aggregating $6,865.62; and against Hugo Schaefer for like items and for the same period, aggregating $6,836.34.

In each of said claims preference and priority of payment was claimed under sections 3466 and 3467 of the United States Revised Statutes (Comp. St. §§ 6372, 6373) and section 64a of the Bankruptcy Act of 1898 (Comp. St. § 9648).

Within a month thereafter, the trustee for the bankrupts filed a petition setting forth his objections to the final proof of claim, as follows: (a) That the claim was not filed within one year, as limited by the Bankruptcy Act. (b) That no claim was filed by the United States in this court within one year from the date of adjudication. (c) That the claim does not set forth facts constituting any valid claim by the United States against the estate of the said bankrupts or the trustee thereof, or the assets or property belonging to the estate, either as individuals or as partners. (d and e) That neither partner individually nor the partnership did or does owe the United States taxes for the fiscal years ending June 30, 1917 and 1918, respectively. (f) That Walter Brezin did not and does not owe taxes to the United States for 1917, 1918, 1919, or any part thereof. (g) The same as next hereinabove as to Hugo Schaefer. (h and i) That no assets of any kind belonging to the individual partners came into possession of the trustee in bankruptcy.

The petitioner then prayed for an order disallowing and rejecting the claim of the United States and for further relief.

An order to show cause, issued by and returnable before the referee in bankruptcy next ensued, and, as a result of the hearing had before him, the referee made an order reciting that the claim as against the partnership, amounting to $1,232.01, should be allowed; that all the assets which came into the trustee's possession were assets of the partnership, except $1,000 realized from the individual estate of Hugo Schaefer; that the partnership assets are not liable for the payment of taxes owed by the individual partners; and that neither of the individual partners had any taxable income for the years 1917, 1918, and 1919, which could form the basis for the imposition of a tax claim against them as individuals.

The referee then ordered that the claim of the United States in said sum of $1,232.01 be allowed with interest, that the said claim in all other respects be disallowed, and the trustee instructed that the same does not constitute a claim against the estate in his hands.

The United States thereupon filed its petition for review, claiming that the referee erred in two particulars, viz.: (1) In finding that the partnership assets are not liable for the payment of taxes owed by the individual partners. (2) That neither of the individual partners had any taxable income for the years stated above which could form the basis of a tax claim against them; and praying that the order be reviewed and reversed, so far as it disallows the claim of the United States and instructs the trustee that said claim does not constitute a claim against the estate in his hands.

The taxes claimed from the partnership were the additional excess profits taxes for the fiscal year ending June 30, 1917, and the additional half year, ending January 1, 1918. These amounted to $1,232.01, and, as neither party hereto has objected to that portion of the referee's order which provides for the payment thereof, we are in nowise concerned therewith.

[1] Although not certified to this court for review, the fact that the trustee largely emphasizes the point in his argument makes the first matter calling for consideration the question as to whether or not the United States is barred from pressing its claim, not having filed the same within one year from the date of adjudication. The trustee relies upon section 57n of the Bankruptcy Act, and upon the Anderson Case (C. C. A.) 279 Fed. 525, in support of his contention.

The language of section 57n (Comp. St. § 9641) is in part, as follows:

"Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication. * * * "

While in the Anderson Case the court, among other things, said:

"The United States must file its claim for taxes as any other creditor, if it desires to share in the estate, and the court must determine any question arising as to the amount or legality of such tax."

The question of limiting the time of the United States for the filing of claims has been many times presented to the courts for decision, and the general trend of opinion has been to the effect that the government is not bound as are ordinary creditors. In re Prince & Walter (D. C.) 131 Fed. 546; In re Fisher & Co. (D. C.) 148 Fed. 907.

The Anderson Case, while seeming to hold to the contrary, really goes no further than to rule that the government cannot, after notice, indefinitely refuse to present its claim. More than two years had elapsed after adjudication of bankruptcy in this case, and the trustee, desirous of settling the estate, prayed for—

"an order, barring and foreclosing the United States from participating in the estate herein, or in the alternative that the United States be directed to file its claim or claims with the referee herein on or before a day certain, in order that the trustee may object thereto and hearings had on said claim in accordance with law."

The United States appeared specially and apparently was satisfied to move a dismissal of the trustee's petition on the ground that the court was without jurisdiction and that service upon the collector of internal revenue was not service upon the United States. These objections being overruled by the referee, testimony was taken on behalf of the trustee, and an order entered barring the United States from participating in the estate for any income tax for the year 1917. The District Court affirmed the referee's order and the Circuit Court of Appeals, after quoting section 64a of the Bankruptcy Act, and calling attention to the fact that it constitutes "a departure from the principles of public policy theretofore prevailing as to the rights of the sovereign which were recognized in the previous acts of 1800, 1841, and 1867," quotes in support of that conclusion, and as defining the scope thereof, the language of the Circuit Court of Appeals in the case of In re General Film Corp., 274 Fed. 903, as follows:

"We regard this section (64a) as binding on the government because it is named therein and, while conferring priority, as giving the bankruptcy court the power to hear and determine any question that arises as to the amount or legality of a tax assessed by it. The provision applies to taxes of all the persons mentioned, and we could not differentiate the government from the other persons in the absence of language justifying it."

The Anderson opinion then goes on to say:

"The United States must file its claim for taxes as any other creditor, if it desires to share in the estate, and the court must determine any question arising as to the amount or legality of such tax. It cannot stand by, as it did here, after permission having been granted to file its claim, and expect to subsequently collect the tax from the bankrupt or his trustee. To permit such a procedure would make it impossible to say when there could be a winding up of the bankruptcy proceedings and a distribution of the assets."

The departure in public policy above noted consists in giving the federal courts jurisdiction as to the amount or legality of any tax, and apparently putting the United States on a par with other taxing divisions. Section 64a expressly recognizes priority and is silent as to any limitation of time, simply making it mandatory that the courts shall order the payment of taxes in advance of payments to creditors.

While it makes a distinct departure from the provisions of section 28, subd. 5, of the previous act (14 Stat. 531) which says "that nothing contained in this act shall interfere with the assessment and collection of taxes by the authority of the United States or any state," it encroaches in no wise upon the authority of section 57n of the Bankruptcy Act, which states that "claims shall not be proved against a bankrupt

estate subsequent to one year after the adjudication,   *   *   * " and as this section fails to name the United States in any way, it follows that there is applicable thereto the well-established principle that a sovereign cannot be bound by a statute of limitations in which it is not named.

As to the exemption of the United States from the limitation of time, see In re Stoever (D. C.) 127 Fed. 394; In re Cleanfast Hosiery Co., 4 Am. Bankr. Rep. 702 (Ref. N. Y.); In re Prince & Walter (D. C.) 131 Fed. 546; In re Fisher & Co. (D. C.) 148 Fed. 907.

In the case of United States v. Birmingham Trust & Savings Co., 258 Fed. 562, 169 C. C. A. 502, the Circuit Court of Appeals for the Fifth Circuit speaks as follows:

"The right of the United States to present a claim in a bankruptcy case at any time while the bankruptcy is pending and the funds thereof are not distributed cannot be disputed."

Under the circumstances of the present case the above language seems entirely appropriate, and I am of the opinion that the United States is altogether within its rights in the presentation of its claims despite the fact that more than one year had elapsed since the bankruptcy adjudication, especially as the funds in the trustee's hands to a considerable extent remain undistributed, and property in the course of administration under the Bankruptcy Act is not freed from liens or claims for taxes. 29 L. R. A. 280, 283; In re Epstein, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465; Stokes v. State, 46 Ga. 412, 12 Am. Rep. 588.

[2] The referee certifies that all the assets which came into the trustee's hands were the assets of the partnership, except $1,000, which was realized from the individual estate of Hugo Schaefer.

The testimony shows that each of the partners was entitled to 50 per cent. of the net profits of the partnership and a salary of $10,400 per year. The partners, instead of drawing out their respective 50 per cent. shares of the net profits from year to year, left a considerable portion in the business undistributed, and during the years 1917, 1918, and 1919 the distributive share of each partner, in excess of the amounts actually withdrawn by him, totaled $26,140.05, or a little more than $52,000 in all, left in the business.

The government tax, assessed against the two partners individually for the same three years, totaled $13,701.98; each partner being assessed for approximately one-half thereof, and the taxes so assessed not having been paid.

Pursuant to the conclusions already reached hereinabove, there would seem to me to be no doubt as to the government's right to priority of payment, provided only that there be funds in existence properly chargeable with such payments. And in this connection it must be remembered that the taxes here sought are claimed as having accrued on the various dates when, under the income tax laws then in force, they originally became due and payable. There is no dispute but that, on these various days, there were actual funds in being, voluntarily left by Brezin and Schaefer among the partnership moneys, and which, if they had been claimed by the partners as individuals—

as with perfect propriety they could have been claimed under the articles of copartnership—would have more than sufficed to put the individuals in possession of resources out of which these taxes could have been paid and satisfied. Has the refusal or neglect of the partners to claim their individual rights from time to time, their election to leave their respective personal moneys in their business enterprise so changed the character of those moneys, so undermined the government's claim as practically to nullify it, and, at the same time, put in possession of the trustee, for the benefit of partnership creditors, many thousands of dollars which, as the result of the partners' mere election, are listed as partnership funds, whereas, they were actually, at all times throughout the period herein involved, individual funds, even though unclaimed? I believe not, and although, as claimed by counsel for the trustee, there is, under the terms of section 3186, Revised Statutes (Comp. St. § 5908), no specific statutory lien in this case, I am yet of the opinion that sections 3466, Revised Statutes, and 64a of the Bankruptcy Act do give the government a priority right in the premises, and that such priority right as thus set forth is a declaration of the common-law right of the sovereign to be first paid. U. S. v. National Surety Co., 254 U. S. 73, 41 Sup. Ct. 29, 65 L. Ed. 143.

"At common law the crown of Great Britain, by virtue of a prerogative right, had priority, over all subjects for the payment out of a debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor, or had been placed in the possession of a third person, or was in custodia legis. The priority could be defeated or postponed only through the passing of title to the debtor's property, absolutely or by way of lien, before the sovereign sought to enforce his right. * * * The right of priority has been likened to an equitable lien. State v. Rowse [49 Mo. 586]." Marshall v. New York, 254 U. S. 382–386, 41 Sup. Ct. 144, 145 (65 L. Ed. 315).

At all times, during the years in question, as already said, there were funds in the business to which each partner, under the articles of copartnership, might have laid claim as his own. They were his to do with as he pleased, and they were the very funds which, in part, served as the foundation for the imposition of the tax, collection of which is herein sought. The fact that each partner was willing to forego the physical withdrawal of these funds cannot, in my opinion, succeed in defeating the government's equitable lien.

It should be borne in mind that this proceeding is not designed to tax the partnership for taxes due from the individuals, and therefore runs in no wise counter to the Revenue Acts of 1917 (Comp. St. § 6336⅜a et seq.) and of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.). The taxes herein have been assessed against the individuals, and all that is now sought is an available and proper fund out of which to collect the same, as so assessed.

[3] The government's claim for taxes is not to be classed with a creditor's claim for the payment of an ordinary debt, for "taxes are not debts, but imposts levied for the support of the government." U. S. v. Proctor (D. C.) 286 Fed. 272; New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284. See, also, Lane County v. Oregon, 7 Wall. 71, 19 L. Ed. 101; Meriwether v. Garrett, 102 U.

S. 472, 26 L. Ed. 197; Crabtree v. Madden, 54 Fed. 431, 4 C. C. A. 408; City of Camden v. Allen, 26 N. J. Law, 398.

Therefore, in my opinion, the government's claim, being in the nature of an equitable lien, has followed the property into the hands of the trustee in bankruptcy, where it awaits satisfaction. And this satisfaction, so far as Hugo Schaefer is concerned, should first be had by applying to the government's claim the $1,000 found by the referee to be his individual property.

Concerning the referee's finding that no assets of any kind belonging to the said individual partners came into possession of the trustee in bankruptcy, and that neither of the individual partners had any taxable income for the years involved which could form the basis of a tax claim against them, it is worthy of note that the bankrupts themselves do not agree with that conclusion, as evidenced by the sworn schedules of assets and liabilities filed by them in the bankruptcy proceeding.

An examination of these schedules shows that they charge themselves as owing the United States $3,887.19 and $3,921.21, respectively, for income taxes; the same being approximately the totals of the amounts claimed to be due from them on original returns filed for the years 1918 and 1919. These statements are, of course, not binding on the trustee, but, in view of the fact that they are so clearly declarations against interest, taxes not being dischargeable claims, they would seem to be strongly confirmatory of the government's contention that the funds to which, under the articles of copartnership, the individual partners were entitled to lay claim and yet left in the partnership, were, in truth, individual moneys, so far as a governmental tax collection matter is concerned. To argue otherwise were to establish the right of the individual connected with a partnership, to determine largely what should or should not be subjected to taxation.

The 1921 Revenue Act (Comp. St. Ann. Supp. 1923, § 6336⅛a et seq.), as did the 1918 act, provides that individuals carrying on a partnership business shall be liable for income tax in their individual capacity only, and that there shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income is computed upon the basis of a period different from the basis upon which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any annual accounting period of the partnership ending within the fiscal year or calendar year, upon the basis of which the partner's net income is computed.

In the instant case there were admittedly net profits accruing to each partner during the years 1917, 1918, and 1919, and, while it may be true that in 1920 there occurred a loss of more than $40,000, which in effect wiped out the prior profits, I am yet of the opinion that, inasmuch as the undisturbed net profits of each individual partner for 1917, 1918, and 1919 were more than sufficient to pay the government's tax, and were in no wise so earmarked as to identify them with the funds paid out in connection with the loss in 1920, the funds remaining in the trustee's hands are liable in their entirety for the gov-

ernment's lien until the same is paid; in other words, that each individual partner, during those years, had in reality a taxable income forming the basis for a tax claim against him.

[4] The loss in 1920 cannot in any event be charged against the profits of the three previous years, for the reason that the Revenue Act of 1918, § 204, in force when this loss occurred, provides that the only net loss which a taxpayer might deduct was a loss in the operation of his business occurring after October 31, 1918, and before January 1, 1920. This loss, having occurred subsequent to this last-named period, is only deductible on a return of income for 1920.

Inasmuch as the undistributed profits in a partnership are to be used, so far as they extend as the basis for the computation of an individual income tax, a partner possessed of such profits certainly has a taxable income, and such income, even in the guise of partnership funds, is available for collection, as well as computation, purposes.

I am therefore of the opinion that the government is right in its contention (1) that the so-called partnership assets of Brezin and Schaefer, made up as they were, are liable for the payment of taxes owed by the individual partners, and (2) that both of the individual partners had taxable incomes for the years 1917, 1918, and 1919, properly forming the basis of a tax claim against them.

The order of the referee, therefore, so far as it disallows the government's demand and instructs the trustee that the same does not constitute a claim against the estate in his hands, is reversed.

An order in conformity with the views herein expressed may be presented and will be signed.