UNION COUNTY NAT. BANK OF LIBERTY, IND., v. OZAN LUMBER CO.

(Circuit Court, W. D. Arkansas, Texarkana Division. January 2, 1904.)

1. CONSTITUTIONAL LAW—DENIAL OF EQUAL PROTECTION OF LAWS—VALIDITY OF STATE STATUTE.

Act Ark. April 23, 1891 (Sess. Acts 1891, p. 296), requiring all negotiable instruments taken in payment for any patented machine or thing or any patent right to be on a printed form, stating the consideration on its face, and declaring all such notes not showing on their face for what they were given absolutely void, but which further provides that "this act shall not apply to merchants and dealers who sell patented things in

the usual course of business," is void as in violation of the provisions of the fourteenth amendment to the federal Constitution that no state shall deny to any person within its jurisdiction the equal protection of the laws.

At Law. On demurrer to answer.

Morris M. Cohn, for plaintiff.

McRae & Tompkins and C. C. Hamby, for defendant.

ROGERS, District Judge. Plaintiff, the assignee of certain promissory notes, drawn in the usual form, sued the defendant, who is the maker of the notes. The defendant answered in two counts. Plaintiff interposed a general demurrer to the second count, which is as follows:

"That said notes were given for a patented article, covered by letters patent No. 621,043, granted March 14, 1889, and by letters patent No. 654,954, granted July 31, 1900, to George W. Decker, copies of which letters patent and of the specifications and drawings of said patents, authenticated by the seal and certified by the Commissioner of Patents, defendant holds subject to inspection by the plaintiff, and subject to the orders of the court; that said notes were given for said machine patented as aforesaid, and were not executed upon a printed form which showed upon its face that said notes were executed in consideration of a patented machine, implement, substance, or instrument, as required by section 493 of Sandel & Hill's Digest of the Statutes of Arkansas; and that the plaintiffs herein have taken said notes well knowing the same to be executed for such patented article, and therefore defendant denies that the plaintiff is an innocent holder, and says that said notes are absolutely null and void."

This count is based on the act of the Legislature of the state of Arkansas approved April 23, 1891 (Sand. & H. Dig. §§ 493–496, inclusive). The act is as follows:

"Section 1. That hereafter any vendor of any patented machine, implement, substance, or instrument of any kind, or character whatsoever, when the said vendor of the same effects the sale of the same to any citizen of this state on a credit, and takes any character of negotiable instrument, in payment of the same, the said negotiable instrument shall be executed upon a printed form, and show upon its face that it was executed in consideration of a patented machine, implement, substance or instrument, as the case may be, and no person shall be considered an innocent holder of the same, though he may have given value for the same before maturity, and the maker thereof may make defense to the collection of the same in the hands of any holder of said negotiable instrument, and all such notes not showing on their face for what they were given shall be absolutely void.

"Sec. 2. That the foregoing section shall also apply to vendors of patent rights, and family rights to use any patented thing of any character whatever.

"Sec. 3. That any vendor of any patented thing of any character, or any vendor of any patented right or family right to use any patented thing of any character whatsoever, who shall violate the provisions of section one of this act, shall upon conviction be punished by a fine of not more than three hundred dollars.

"Sec. 4. This act shall not apply to merchants and dealers who sell patented things in the usual course of business.

"Sec. 5. This act shall take effect from and after its passage.

"Approved April 23, 1891." Sess. Acts 1891, p. 296.

If this act is constitutional, the demurrer must be overruled; if unconstitutional it must be sustained.

In Wyatt v. Wallace, 67 Ark. 575, 55 S. W. 1105, the Supreme Court of Arkansas had under consideration the construction to be placed

upon this act in so far as it applied to the sale of "patent-right territory in the state of Arkansas," and the act was upheld. In that case the note sued on was given for a one-third interest in a "patent-right territory." The court, speaking through Mr. Justice Hughes, simply set out the statute at length as I have, supra, and then adds:

"This act is plain and emphatic. The note sued on in this case was void for noncompliance with section 493 of the statute quoted above. The note could not be the basis of recovery in this suit. As an evidence of indebtedness, it was void under section 493."

It may be this statute is valid where the consideration is an interest in a "patent-right territory," and yet invalid where the consideration is for a machine protected by a patent, as in the case at bar. The cases make a wide distinction on that point. See notes to Commonwealth of Ky. v. Petty, 29 L. R. A. 786 et seq.; Patterson v. Kentucky, 97 U. S. 501, 24 L. Ed. 1115; First Nat. Bank of Chattanooga v. Stockwell, 20 L. R. A. 605, and notes; Mason v. McLeod, 41 L. R. A. 548, and notes; Castle v. Hutchinson (C. C.) 25 Fed. 394; Reeves v. Corning (C. C.) 51 Fed. 774. At page 506, 97 U. S., 24 L. Ed. 1115 (Patterson v. Kentucky), the distinction referred to above is clearly recognized. I need not stop to multiply, review, or distinguish the cases on that point. If the only question involved was the constitutionality of the first section of the act of April 23, 1891, I should feel inclined to uphold the statute in this case where the consideration of the note is for a patented machine, and not for an interest in a patent right, or patent-right territory. See the cases cited supra. But the third section of the act makes it a criminal offense to violate the first section, and the fourth section of the act excepts from the provisions of the act "merchants and dealers who sell patented things in the usual course of business." Section 1 of article 14 of the Constitution of the United States provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." It will be observed that the provisions of section 4 of the act, which excepts from the operation of the act "merchants and dealers who sell patented things in the usual course of business," does not except from the operation of the act merchants and dealers who sell patent rights or patent-right territory. In other words, the exception is limited to patented things sold by merchants and dealers in the usual course of business; so that it may be that the case at bar is distinguished from the case of Wyatt v. Wallace, supra. It is, however, not necessary in this case to express any opinion as to the correctness of the decision in that case, or to criticise or distinguish it from the case at bar. Any opinion in reference to the questions involved in that case is distinctly reserved until the necessity arises for their consideration. By the plain provisions of this act it is made to apply to all persons except "merchants and dealers who sell patented things in the usual course of business." How shall this act be reconciled with the last paragraph of the first section of the fourteenth article of the Constitution of the United States, which forbids in terms any state to "deny to

any person within its jurisdiction the equal protection of the laws"? How can the state, acting within this provision of the Constitution, protect by its laws "merchants and dealers who sell patented things in the usual course of business," and deny the same protection to other persons; as, for instance, manufacturers of the same patented things who "sell them in the usual course of business"? If a merchant or dealer had sold the article in the usual course of business, for which the notes in question were given, and, having sued on them, could recover, notwithstanding the statute in question, must not the same right to recover be accorded all other persons under like circumstances? If the statute in question is a perfect defense for this defendant, must it not also be a perfect defense in all similar cases, without reference to who the plaintiff may be, or what his business may be? If any citizen of this state has a right to set up a certain statutory defense, must not all other citizens, without reference to their occupation, whether of this or any other state, have the same right? The decision of this case involves the answer to these questions. The principle is not a new one. It has arisen in many cases; and sometimes they leave the line between the police powers of the state and the powers of the United States, as found in their Constitution, but dimly drawn, and even in apparent conflict. Nevertheless, each case must be met, having due regard for the rights, duties, and powers of both governments.

In Gulf, Colorado & Santa Fé Ry. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, the state of Texas had enacted a statute providing that:

"Any person in this state having a valid bona fide claim for personal services rendered or labor done, or for damages, or for overcharges on freight, or claims for stock killed or injured by the train of any railway company, provided that such claim for stock killed or injured shall be presented to the agent of the company nearest to the point where such stock was killed or injured, against any railway corporation operating a railroad in this state, and the amount of such claim does not exceed $50.00, may present the same, verified by his affidavit, for payment to such corporation by filing it with any station agent of such corporation in any county where suit may be instituted for the same, and if, at the expiration of thirty days after such presentation, such claim has not been paid or satisfied, he may immediately institute suit thereon in the proper court; and if he shall finally establish his claim, and obtain judgment for the full amount thereof, as presented for payment to such corporation in such court, or any court to which the suit may have been appealed, he shall be entitled to recover the amount of such claim and all the costs of suit, and in addition thereto all reasonable attorney's fees, provided he has an attorney employed in his case, not to exceed $10.00 to be assessed and awarded by the court or jury trying the issue. * * *"

In that case it was held that the statute operated "to deprive the railroad companies of property without due process of law, and denies to them the equal protection of the law, in that it singles them out of all citizens and corporations, and requires them to pay, in certain cases, attorney's fees to the parties successfully suing them, while it gives to them no like or corresponding benefit." Mr. Justice Brewer, delivering the opinion of the court in the case, collates a large number of cases from various states, including Arkansas, to illustrate the conclusions reached by the court. He distinctly admits that it is not

127 F.—14

within the scope of the fourteenth amendment to withhold from states the power of classification, but affirms that the classification must be based "upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." What can be more arbitrary than to say that merchants shall be exempt from the provisions of the first three sections of the act, but it shall be in full force and effect as to all other persons? To illustrate, a merchant may sell to A. B., for the use of his wife, a sewing machine, in the usual and ordinary course of business, and the act does not apply as to him. But A. B. on the following day loses his wife, has no use for the machine, and sells it to C. D., and the act applies with full force as to him, and the note he takes for it is void in his hands and those of all other persons if it does not conform to the act, and he is subject to indictment. Can any sort of logic or reasoning, however ingenious, justify such an arbitrary act of legislation as that? In the careful examination of a wide range of cases, construing the legislation of the different states relating to class legislation (of which, in recent years, there has been no dearth, if not, indeed, a superabundance), no statute has been found more arbitrarily or flagrantly at variance with equality than this. It is, however, not without precedent. Connolly v. Union Sewer Pipe Company, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, was a case of this nature. Connolly bought of the Union Sewer Pipe Company a lot of sewer pipe, for which he executed his notes. He did not pay the notes when they matured, and the company sued him. Connolly interposed several defenses. Among others he alleged that the company was, when the pipe was sold and afterwards, a member of a trust, illegal, among other reasons, because it was organized and operating in violation of an Illinois statute relating to trusts and other illegal combinations in trade, which, by express provision, made the notes sued on void, both at law and in equity. This act of the state of Illinois will be found set out at length on pages 552–555, 184 U. S., pages 436, 437, 22 Sup. Ct., 46 L. Ed. 679. The eighth and ninth sections of the act are as follows:

"Sec. 8. That any contract or agreement in violation of the provisions of this act shall be absolutely void, and not enforceable either in law or equity.

"Sec. 9. The provisions of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser."

Mr. Justice Harlan, in delivering the opinion of the court in that case, said:

"That the arrangement or combination made between the Union Sewer Pipe Company and other companies, corporations, and firms created such a trust as the Illinois statute forbids is manifest from the evidence in the record. It is equally clear that, if the plaintiff was an Illinois corporation, its charter could be forfeited, and an end put to its corporate existence by proceedings instituted by the Attorney General of the state. Sections 1, 2, and 3. It is also clear that, if the statute is not altogether invalid, the defendant could plead nonliability for the pipe purchased by them upon the ground that the plaintiff was, under the statute of Illinois, an illegal combination, and the contracts which it made with the defendants were void. Sections 8, 10. The statute expressly authorizes such a defense."

Further on he says:

"The question of constitutional law to which we have referred cannot be disposed of by saying that the statute in question may be referred to what are called the police powers of the state, which, as often stated by this court, were not included in the grants of power to the general government, and therefore were reserved to the states when the Constitution was ordained. But as the Constitution of the United States is the supreme law of the land, anything in the Constitution or statutes of the states to the contrary notwithstanding, a statute of a state, even when avowedly enacted in the exercise of its police powers, must yield to that law. No right granted or secured by the Constitution of the United States can be impaired or destroyed by a state enactment, whatever may be the source from which the power to pass such enactment may have been derived. 'The nullity of any act inconsistent with the Constitution is produced by the declaration that the Constitution is the supreme law.' The state has undoubtedly the power, by appropriate legislation, to protect the public morals, the public health, and the public safety; but if, by their necessary operation, its regulations looking to either of those ends amount to a denial to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void. Gibbons v. Ogden, 9 Wheat, 1, 210, 6 L. Ed. 23; Sinnot v. Davenport, 22 How. 227, 243, 16 L. Ed. 243; Missouri, Kansas & Texas Railway v. Haber, 169 U. S. 613, 626, 18 Sup. Ct. 488, 42 L. Ed. 878. What may be regarded as a denial of the equal protection of the laws is a question not always easily determined, as the decisions of this court and of the highest courts of the states will show. It is sometimes difficult to show that a state enactment, having its source in a power not controverted, infringes rights protected by the national Constitution. No rule can be formulated that will cover every case. But upon this general question we have said that the guaranty of the equal protection of the laws means 'that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and in like circumstances.' Missouri v. Lewis, 101 U. S. 22, 31, 25 L. Ed. 989. We have also said: 'The fourteenth amendment, in declaring that no state "shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses.' Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923. This language was cited with approval in Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064, 30 L. Ed. 220, in which it was also said that 'the equal protection of the laws is a pledge of the protection of equal laws.' In Hayes v. Missouri, 120 U. S. 68, 71, 7 Sup. Ct. 350, 30 L. Ed. 578, we said that the fourteenth amendment required that all persons subject to legislation limited as to the objects to which it is directed or by the territory within which it is to operate 'shall be treated alike under like circumstances and considerations, both in the privileges conferred and in the limitations imposed.' 'Due process of law and the equal protection of the laws,' this court has said, 'are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government.' Duncan v. Missouri, 152 U. S. 377, 382, 14 Sup. Ct. 570, 38 L. Ed. 485. Many other cases in this court are to the like effect. These principles, applied to the case before us, condemn the statute

of Illinois. We have seen that under that statute all except producers of agricultural commodities and raisers of live stock, who combine their capital, skill, or acts for any of the purposes named in the act, may be punished as criminals, while agriculturalists and live-stock raisers, in respect of their products or live stock in hand, are exempted from the operation of the statute, and may combine to do that which, if done by others, would be a crime against the state. The statute so provides notwithstanding persons engaged in trade or in the sale of merchandise and commodities within the limits of a state and agriculturalists and raisers of live stock are all in the same general class; that is, they are all alike engaged in domestic trade, which is, of right, open to all, subject to such regulations, applicable alike to all in like conditions, as the state may legally prescribe. The difficulty is not met by saying that, generally speaking, the state, when enacting laws, may, in its discretion, make a classification of persons, firms, corporations, and associations, in order to preserve public objects; for this court has held that classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. * * * No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and not a mere arbitrary selection.' Gulf, Colorado & Santa Fé Railway v. Ellis, 165 U. S. 150, 155, 159, 160, 165, 17 Sup. Ct. 255, 41 L. Ed. 666. These principles were recognized and applied in Cotting v. Kansas City Stock Yards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, in which it was unanimously agreed that a statute of Kansas regulating the charges of a particular stockyards company in the state, but which exempted certain stockyards from its operation, was repugnant to the fourteenth amendment, in that it denied to that company the equal protection of the laws."

The principles decided in that case condemn the statute of Arkansas under consideration as in violation of section 1 of the fourteenth amendment to the Constitution of the United States.

It may not be out of place to observe, in this connection, that this case demonstrates that in all anti-trust legislation enacted by the states the law must be made to apply to all classes of persons and corporations alike, otherwise it becomes invalid, because in violation of the fourteenth amendment to the Constitution of the United States.

A single question remains: Can the fourth section of the act be eliminated, leaving the rest of the act in operation? That question is answered by Connolly v. Union Sewer Pipe Co., supra. Mr. Justice Harlan says:

"The principles applicable to such a question are well settled by the adjudications of this court. If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand, and be enforced. But if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the Legislature, then the entire statute must be held inoperative. The first section of the act here in question embraces by its terms all persons, firms, corporations, or associations of persons who combine their capital, skill, or acts for any of the purposes specified, while the ninth section declares that the statute shall not apply to agriculturalists or livestock dealers in respect of their products or stock in hand. If the latter

section be eliminated as unconstitutional, then the act, if it stands, will apply to agriculturalists and livestock dealers. Those classes would in that way be reached and fined, when, evidently, the Legislature intended that they should not be regarded as offending against the law, even if they did combine their capital, skill, or acts in respect of their products or stock in hand. Looking, then, at all the sections together, we must hold that the Legislature would not have entered upon or continued the policy indicated by the statute unless agriculturalists and livestock dealers were excluded from its operation, and thereby protected from prosecution. The result is that the statute must be regarded as an entirety, and in that view it must be adjudged to be unconstitutional as denying the equal protection of the laws to those within its jurisdiction who are not embraced by the ninth section."

This language is just as applicable to the case at bar as it was to the case then under consideration. The whole act is unconstitutional in so far as it applies to the sale of "patented things."

The demurrer to the second paragraph of the answer is sustained.