COLUMBIA COUNTY BANK *v.* EMERSON.

86   155<br>f87   560

Opinion delivered April 27, 1908.

1. BILLS AND NOTES—SALE OF PATENTED ARTICLES.—A note given as payment for royalty checks, which were to be used in purchasing patented articles, is within the terms of Kirby's Digest, § 513, requiring notes given in payment of patented articles to be written on a printed form and to show their consideration on their face. (Page 159.)

2. SAME—DISCRIMINATION IN FAVOR OF MERCHANTS UPHELD.—The act of April 23, 1891, providing that notes given for payment of patented articles or patent rights must show that they were so given, and permitting defenses to such notes in the hands of innocent holders, did not unlawfully discriminate in providing in § 4 that the act shall not apply to merchants and dealers who sell patented things in the usual course of business. (Page 159.)

Appeal from Columbia Circuit Court; *Charles W. Smith,* Judge; affirmed.

The Columbia County Bank brought suit against J. W. and S. M. Emerson upon a note in the following language, towit:

"Magnolia, Arkansas, April the 27th, 1904.
"$147.00.

"November the 10th, 1904, after date, for value received, we promise to pay to the order of J. C. Karner one hundred and forty-seven and no-100 dollars, at Magnolia, Arkansas, with interest at 10 per cent. per annum from maturity until paid. The makers and indorsers of this note hereby severally waive presentment of payment, notice of non-payment and protest.

"J. W. EMERSON,
"S. M. EMERSON."

Indorsed: "Without recourse.
"J. C. KARNER."

The defendants answered, setting up that the note was given in payment of patent-right territory, and was not executed upon a printed form as required by Kirby's Digest, § § 512-4, and that plaintiff is not an innocent holder of the note.

There was testimony tending to show that the bank acquired the note without knowledge of any defense thereto. J. C. Karner, payee of the note, testified that he executed to defendants a receipt as follows:

"$294.00.                    Magnolia, Arkansas, April 27, 1904.

"Received from J. W. and S. M. Emerson two hundred and ninety-four dollars, in full payment for seventy royalty checks for $4.20 each, being advanced royalty on Karner Sash Locks, the purpose of which is to carry locks in stock ready for shipment to such points in the United States as they may direct.

"J. C. KARNER."

He testified that the note was given for coupons which his factory accepted as payment on the locks, and that he employed the defendants to sell these locks.

The following is a copy of the coupon checks delivered to the defendants by Karner:

"Nickel Manufacturing Co., Morris, Ill., $4.20: Upon presentation of this check, duly indorsed by one of my authorized managing agents, you will accept the same in payment of thirty-five cents per dozen, on twelve dozen Karner Sash Locks at the price of $1.70 per dozen, and charge the same to my account on royalty.

"J. C. KARNER."

It was proved that Karner was assignee of the patent under which the Karner Sash Lock was manufactured and sold.

The contract between Karner and defendants was as follows:

"This is to certify that J. C. Karner, of Mexia, Texas, is the exclusive owner of letters patent No. 686,673, for an improved automatic window lock, to be hereafter known as the 'Karner Sash Lock.' I have therefore this day appointed J. W. and S. M. Emerson or their legal representatives sole and exclusive agent for the sale of the Karner Sash Lock in the county of Nevada, State of Arkansas, in which to begin work, and for one year from date hereof I hereby authorize said agent to order locks from Nickel Manufacturing Company, Morris, Ill., and I join said manufacturers in agreeing to furnish said agent all the sash locks they may order at the price of one dollar and seventy ($1.70) cents per dozen, according to my contract with them for furnishing the goods, a copy of which is hereto attached. I further agree that, for every sixty dozen locks ordered by said agent, they shall have exclusive control of an additional county for one year from date of selection, such selection to be made by them and upon any unoccupied county in the United States, and I agree to furnish them with well settled counties to select from for five years from date hereof; said agent having full authority to sub-lease any field accumulated under this contract for one year from date of selection. They shall also have equal privileges with other agents of selling the Karner Sash Locks in the counties of Columbia, Lafayette and Union, State of Arkansas, and Claibourne Parish, State of Louisiana for one year from date. I further agree to furnish free of charge one perfect model, one hundred order blanks, and one hundred cards with which to begin work on or before the 10th day of May, A. D., 1904.

"It is understood that, for having leased the above field and for any privilege which said agent may enjoy under this contract, I make no requirement of them whatever, further than they agree to use ordinary diligence in selling said goods, and for not less than the established retail price of fifty cents.

"Given under my hand this, the 27th day of April, 1904.

"J. C. KARNER."

The plaintiff asked the court to instruct the jury as follows:

"You are instructed that if you find from the evidence that the note sued on was given in part payment of the purchase money of patented instruments known as the 'Karner Sash Locks', and that they were not given in payment of patent-right territory, then you will find for the plaintiff the amount due on said note, together with the interest due thereon." The court refused to instruct the jury as asked by plaintiff, but instructed them as follows:

"The court instructs the jury that if they find from the evidence that the note herein sued on was executed in payment of a patent right or in payment of patent-right territory, or payment of purchase money for patented instruments, and that said note is not executed upon a printed form, and does not show upon its face that it was executed in consideration of such patent-right or such patent-right territory, then they will find for the defendants."

There was a general verdict for defendants; also a special verdict finding that the note was not given for patent-right territory, but for a patent instrument or thing. Judgment was entered for defendants. Plaintiff has appealed.

*Smead & Powell* and *McKay & Lile,* for appellant.

1. The general verdict can not be sustained on the theory that there was a lease of patent-right territory, because the act, Kirby's Dig. § 513, applies to sales only; and there is no evidence that there was a sale of a patent right, or patent-right territory.

2. The act is unconstitutional, being in conflict with that clause of the Fourteenth Amendment prohibiting a State from denying to "any person within its jurisdiction the equal protection of the laws." It conflicts also with art. 4, § 2, U. S. Const., and art. 2, § 18, State Const. See, also, 75 Ark. 542.

*Stevens & Stevens,* for appellees.

1. The evidence is ample to sustain the verdict.

2. The constitutionality of the act has been sustained. 50 U. S. (L. Ed.) 1176; 75 Ark. 328; 51 U. S. (L. Ed.) 220.

HILL, C. J. This is a suit upon promissory notes, and the defense thereto is that they were given in payment of patent-

right territory, or in payment of the purchase money of patented instruments, and that they were not executed in conformity to the act of April 23, 1891, which appears as secs. 512, 513 and 514 of Kirby's Digest, requiring such notes to be executed on a printed form showing upon their face that they were executed in consideration of a patented machine, implement or territory, as the case might be.

The case was tried before a jury, and both a general and a special verdict were rendered upon the questions submitted. There was nothing in the case to go to the jury, as the testimony is undisputed, and the contract resting in writing. The substance of the testimony and the written instruments will be found in the statement of the facts. It will be seen therefrom that the consideration for the note was the payment of royalty checks, and the contract shows that these royalty checks were used in purchasing the patented articles and right to sell in certain counties. Therefore, the question really is as to the constitutionality of said act of 1891.

The act, in so far as it affected patent rights, was sustained by this court in *Woods* v. *Carl,* 75 Ark. 328, which case was affirmed by the Supreme Court of the United States, *Woods* v. *Carl,* 203 U. S. 358. See, also, *Allen* v. *Riley,* 203 U. S. 347, sustaining a statute of Kansas to the same general purpose as the one in question.

In *Woods* v. *Carl,* this court left open, because unnecessary to that decision, the effect of the exemption in the act as to sales of patented articles. That question has now been settled by the Supreme Court of the United States. In *Union County Bank* v. *Ozan Lumber Co.,* 127 Fed. 206, this part of this act was held unconstitutional by Judge Rogers on account of this exemption. That case was carried to the Circuit Court of Appeals and there affirmed, the alleged unconstitutionality resting upon another ground. *Ozan Lumber Co.* v. *Union County Bank,* 145 Fed. 344. It was then taken to the Supreme Court of the United States by certiorari, the decisions of Judge Rogers and of the Circuit Court of Appeals were reversed, and the statute sustained on all the points attacked. *Ozan Lumber Co.* v. *Union County National Bank of Liberty,* 207 U. S. 251. This court adopts the reasons of Mr. Justice Peckham, speaking for the

court in that case, as the answer to the argument urged against
the unconstitutionality of the statute.

Judgment affirmed.