MULLINS *v.* COLUMBIA COUNTY BANK.

Opinion delivered October 26, 1908.

1. APPEAL—OBJECTION NOT RAISED BELOW—WAIVER.—Where plaintiff introduced a deposition in which the contents of a writing were proved by secondary evidence, he cannot on appeal for the first time object that the evidence was not the best evidence. (Page 560.)

2. SAME—MOTION FOR NEW TRIAL—SUFFICIENCY.—A motion for new trial which alleges that the court erred in excluding an exhibit to the deposition of a certain witness was sufficient to point out evidence

of such witness which was excluded by the court if such exhibit was the only evidence excluded by the court.  (Page 561.)

Appeal from Columbia Circuit Court; *George W. Hays,* Judge; reversed.

*Stevens & Stevens,* for appellants.

1. If the evidence given by Karner in regard to the consideration of the notes was not competent, he not having the original contract, still the evidence offered to be introduced by the witness Mullins was competent.  The plaintiff, by introducing this character of evidence, waived any objections to error which it had thus invited. 75 Ark. 257; 67 Ark. 47; 69 Ark. 140; 66 Ark. 588.  Where irrelevant evidence has been received without objection, it is not error to allow the adverse party to give evidence to meet it.   5 C. C. A. 538; 97 Am. Dec. 747; 54 Ark. 25; Abbott's Trial Brief, p. 238 (13).  Appellants did not object to this evidence, and if they had done so it would have been their duty to point out specifically their objections to each part of it.  If any part of the evidence was competent, it would be improper to exclude the whole of it on a general objection.   18 Ark. 392; 48 Ark. 177; 80 Ark. 279.  The receipt given for the notes and the coupon check as made exhibits to the deposition were competent, as also the copy of the contract.   29 C. C. A. 334; 13 Cyc. 980.  It is too late to object to the introduction of a copy, instead of an original paper, at the trial.  Such objection should be raised at the examination or upon motion to suppress. 70 U. S. 107, 18 L. Ed. 170.  Objection to secondary evidence should come before trial.   37 Ill. 186; 44 Ill. App. 527.

2. A deposition, once admitted without objection, cannot, as a rule, be afterwards objected to.  If taken under agreement that it is to be read as evidence at the trial, it becomes the property of both parties, if taken for their joint benefit, and either party may read it, or, if taken for the benefit of one party, the other may compel him to read it.   15 Ark. 345; 85 Ark. 263.

*McKay & Lile,* for appellee.

1. Objections not reserved in the motion for new trial will not be considered on appeal.

2. The written contract between Mullins & Karner was the best evidence.  Before he would have the right to introduce

parol testimony as to its contents, it would be necessary to show that it was lost or destroyed, out of reach of the process of the court, or in possession of the opposite party who has failed to produce it after notice to do so. 1 Greenleaf on Ev. § § 557-9, 560-1; 72 Ark. 47; 65 Ark. 475; 76 Ark. 401; 77 Ark. 245.

BATTLE, J. The Columbia County Bank instituted an action against J. E. Mullins and U. C. Mullins on two promissory notes executed by the defendants to the order of J. C. Karner for one hundred and forty-seven dollars each and transferred by payee to the plaintiff. The defendants answered and alleged, in part, as a defense thereto, that the notes were given by them in payment of "patent right territory," and "were not executed upon a printed form showing upon their faces that they were executed in consideration of said patent right territory, as is required by sections 512, 513 and 514 of Kirby's Digest of the Statutes of Arkansas."

The issues in the case were tried by a jury. The notes sued on did not show on their faces for what they were given. The deposition of J. C. Karner, to whom the notes were executed, which was taken by agreement, upon interrogatories, to be read as evidence in behalf of plaintiff, was read as evidence by plaintiff in the trial. He testified that the notes sued upon were executed by the defendants to him. And further testified upon interrogatories, in part, as follows:

"Q. Did you execute to him (them) a receipt for these two notes?

"A. Yes.

"Q. Does this receipt show in full for what these notes were given?

"A. Yes.

"Q. If you executed to them a receipt, will you attach a copy of same, marked Exhibit B, and make it a part of your deposition?

"A. I have done so."

The following is the receipt, marked "Exhibit B":

"Received from J. E. and U. C. Mullins two hundred and ninety-four dollars in full payment for seventy royalty checks for $4.20 each, being advanced royalty on Karner Sash Locks, the

purpose of which is to carry locks in stock ready for shipment to such points in the United States as they may direct.

[Signed]   "Jo C. Karner."

"Q.   Did you employ them to represent you in the sale of Karner Sash Locks?

"A.   Yes.

"Q.   Did you have a written contract to that effect?

"A.   Yes.

"Q.   If so, will you please attach a blank copy of that contract marked Exhibit C, and make it a part of your deposition?

"A.   I have done so, that is, I attach an exact copy of the printed part, which contains the terms of the agreement.  I do not remember names of counties, etc., and cannot fill blanks."

Exhibit C is in the following words and figures:

"This is to certify that Jo C. Karner, of Mexia, Texas, is the exclusive owner of letters patent No. 686,673, for an improved automatic window lock to be hereafter known as the 'Karner Sash Lock.'  I have therefore this day appointed——.................... or ................ legal representatives, sole and exclusive agents for the sale of the Karner Sash Lock in the county of ....................., State of ............., in which to begin work, and from one year from date hereof, I hereby authorize said agent to order locks from Nickel Manufacturing Co., of Morris, Ill., and I join said manufacturers in agreeing to furnish said agents all the sash locks ......... may order at the price of one dollar and seventy cents ($1.70) per dozen, according to my contract with them for furnishing the goods, a copy of which is hereto attached.  I further agree that for every sixty dozen locks ordered by said agent ........... shall have exclusive control of an additional county for one year from date of selection, such election to be made by ......... and upon any unoccupied county in the United States, and I agree to furnish ................ with well settled counties to select from five years from date hereof.  Said agent having full authority to sub-lease any field accumulated under this contract for one year from date of selection .............. shall also have equal privilege with other agents of selling the Karner Sash Locks in the counties of ........... State of ........... for one year from date.

"I further agree to furnish free of charge one perfect model, one hundred order blanks and one hundred cards with which to begin work on or before ........ day of ............. A. D. 19.....

"It is understood that for having leased the above field, and for any privileges which said agent may enjoy under his contract, I make no requirement of ............ whatever further than that ............ agrees to use ordinary diligence in selling said goods, and for not less than the established retail price of fifty cents.

"Given under my hand this ........ day of ............ A. D. 19....."

"Q.  For what were these notes given by them to you?

"A.  For coupons.

"Q.  Did you furnish them with coupon checks upon the Nickel Manufacturing Company of Morris, Ill., for the amount of these notes with which to pay the said Nickel Manufacturing Company as much as 35 cents per dozen on every dozen "Karner Sash Locks" that might be ordered by them from the Nickel Manufacturing Company?

"A.  Yes.

"Q.  If so, will you please attach a copy of said book of coupon checks marked Exhibit D, and make same a part of your deposition?

"A.  I have so marked and attached one out of said book containing 70.  They are all alike."

"Exhibit D is as follows:

Morris, Ill.........

"Nickel Manufacturing Co.,
        "Morris, Ill.

"Upon presentation of this check, duly indorsed by one of my authorized managing agents, you will accept the same in payment of 35 cents per dozen, on 12 dozen Karner Sash Locks at the price of $1.70 per dozen, and charge the same to my account on royalty.

[Signed]    "Jo C. Karner."

"Q.  Who manufactured the 'Karner Sash Locks'?

"A.  The Nickel Manufacturing Co., of Morris, Ill.

"Q.  Are they the sole manufacturers of this lock?

"A.  Yes.

"Q.  Is the Nickel Manufacturing Company under contract with you to manufacture the "Karner Sash Lock" for you and your agents, under your special manager's contract, and to furnish same to you and your agents at $1.70 per dozen, receiving your coupon check for $4.20 as part payment on each twelve dozen window locks so ordered?

"A.  Yes."

J. C. McNeill, cashier of the plaintiff, was then introduced by plaintiff as a witness, and he testified substantially as follows: "Said he was cashier of the Columbia County Bank, and had been for some years; * * * was cashier of the bank in April, 1904; said the two notes executed on the 27th day of April, 1904, by J. E. and U. C. Mullins to J. C. Karner were bought by the Columbia County Bank for a valuable consideration before maturity in the regular course of business, without any notice that they were given for a patented instrument or for patent right territory, and that the bank was the owner of the notes, and was at the time the suit was brought."

The plaintiff then closed.

The defendants then introduced U. C. Mullins, one of them, as a witness, and asked him what was the contract between defendants and Karner upon which the notes sued upon were based; and he said there was a written contract, but he did not have it, but J. E. Mullins did, and he (witness) did not know what had become of it. Upon objection of the plaintiff, the court refused to allow him to answer the question. Defendants then asked witness "if J. C. Karner furnished a model and one hundred order blanks with which to begin work as set out in Exhibit C to his deposition." The court refused to permit defendants to ask the witness any question pertaining to the contract between the parties or of the consideration of the notes as testified to by J. C. Karner, and the court, of its own motion, took from the jury all of J. C. Karner's deposition" and Exhibits B, C and D thereto, which are set out in this opinion, except that which says the notes were executed to him. To the exclusion of this evidence and the refusal to allow the defendants to ask witness the questions the defendants at the time excepted.

No other evidence being adduced, the court instructed the jury to return a verdict for plaintiff, and they did so for $363.85.

The defendant moved for a new trial, in part, upon the following grounds:

"Because the court erred in excluding from the jury the paper 'Exhibit C' attached to J. C. Karner's deposition in answer to question 15, where he says that he had a written contract with J. E. and U. C. Mullins to represent him in the sale of the Karner Sash Locks. The question propounded to him in question 14 is, in substance, 'Did you have a written contract with them to represent you in the sale of Karner Sash Locks? A. Yes. Question 15. If so, will you please attach a blank copy of the contract marked 'Exhibit C,' and make it a part of your deposition? A. I have done so; that is, I attached an exact copy of the printed part which contains the terms of the agreement. I do not remember names of the counties, etc., and cannot fill blanks.' The court erred in excluding this evidence; the court's reason being that the original contract was not in the hands of the plaintiff, and that this evidence was the same as parol evidence to establish the contents of the contract. The court erred because this evidence had been introduced by plaintiff, and had become part of the record in this case to which there had been no exceptions filed, and on which evidence the defendants had relied in the trial of this case. And for it to be withdrawn in the trial of the cause works a hardship on the defendants, and was a surprise to them, and because the court erred in not permitting the defendants to show the contents of the original agreement between J. C. Karner and them in the transaction made at the time of the execution of the notes sued on.

"That the evidence excluded was admissions (adduced) by the plaintiff, which could not be withdrawn, and became a part of the evidence in the cause when filed."

The court denied the motion, and the defendants appealed.

Evidence substantially the same as that excluded in this case was held by this court in *Columbia County Bank* v. *Emerson,* 86 Ark. 155, to be sufficient to sustain a good and valid defense to the action upon notes in that case and to show that the notes were void because in violation of section 513 of Kirby's Digest. But it seems the court excluded it in this

case because it was an effort to prove the existence of writings by copies, instead of introducing the originals. But the copies were competent secondary evidence. The plaintiff had the right to waive the conditions on which their admissibility depended, and did so by adducing the evidence, and thereby gave to it its full force as evidence, and virtually admitted what it sought to prove. *Allen* v. *Ozark Land Co.,* 55 Ark. 549, 555. The trial court erred in excluding the evidence.

But appellee contends that the only part of the exception to the exclusion of a part of the deposition of Karner that was made a ground of the motion for a new trial is that which relates to "Exhibit C", and that the other part of the exception was waived. This is not true. There were only four exceptions to the rulings of the court, and they were to the exclusion of a part of the deposition of Karner, to the refusal to allow witness to answer questions, to the instruction to the jury directing them to return a verdict in favor of the plaintiff, and to the overruling the motion for a new trial. The part of the deposition of Karner which was excluded is set out in full in the bill of exceptions; and stress is given to the error committed in excluding it. In enumerating in their motion for a new trial the reasons for asking a new trial, the defendants say at the conclusion "that the evidence excluded was admissions (adduced) by the plaintiff which could not be withdrawn and became a part of the evidence in the cause when filed." This appears among the reasons given for asking a new trial, and could mean only that the court erred in excluding the part of the deposition of Karner because it was read as evidence by the plaintiff and could not be withdrawn. It was sufficiently specific, because this was the only evidence excluded, and it could not refer to anything else. If it was not intended as a reason for asking a new trial, why did defendants say it? What place can it fill in a motion for a new trial? It can serve no other purpose.

Reversed and remanded for a new trial.