UNION COUNTY NAT. BANK, LIBERTY, IND., v. OZAN LUMBER CO.

(Circuit Court of Appeals, Eighth Circuit.  May 4, 1910.)

No. 2,991.

1. APPEAL AND ERROR (§ 179*)—FEDERAL COURTS—ACTIONS TRIED WITHOUT JURY—MODE OF RAISING QUESTIONS FOR REVIEW.
   On the trial to the court of an action at law in a federal court, where the evidence is not contradictory in substantial respects, it is a proper practice for raising a question of law for review by the appellate court for each party to submit to the trial court a declaration in his favor on such question.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1137; Dec. Dig. § 179.*]

2. APPEAL AND ERROR (§ 1011*)—REVIEW—FINDINGS OF FACT.
   In an action at law tried in a federal court without a jury, findings of fact made by the court on conflicting evidence are conclusive in the appellate court.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3983; Dec. Dig. § 1011.*]

3. BILLS AND NOTES (§ 107*)—NOTES GIVEN FOR PATENTED MACHINE—VALIDITY UNDER ARKANSAS STATUTE—"MERCHANT" OR "DEALER."
   Under Kirby's Dig. Ark. §§ 513–516, requiring negotiable notes taken by any vendor in payment for a patented machine to be on a printed form stating such fact, and providing that all such notes not so showing shall be absolutely void, but that the act "shall not apply to merchants and dealers who sell patented things in the usual course of business," a corporation which contracted to "make and deliver" a patented log loader according to certain specifications, and did so, taking notes therefor which did not state that they were given for a patented machine, was not a "merchant" or "dealer" selling the machine in the usual course of business within the exceptions in the statute, where its principal business was the manufacture of other articles, and it did not appear that it had or had ever kept any of such log loaders on hand for sale, or had ever made any except on orders taken in advance and according to specifications agreed upon.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 227; Dec. Dig. § 107.*]

4. WORDS AND PHRASES—"MERCHANTS"—"DEALERS"—"MANUFACTURERS."
   The words "merchants" and "dealers," according to common understanding, mean something different from the word "manufacturers." The former are generally employed to designate persons engaged in the business of buying and selling merchandise or other personal property in the usual course of trade; the latter to designate those engaged in the business of making or producing articles for use or sale.
   [Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4482–4488; vol. 8, p. 7721; vol. 2, pp. 1859–1862; vol. 5, pp. 4346–4358.]

   Hook, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

Action by Union County National Bank of Liberty, Indiana, against the Ozan Lumber Company.  Judgment for defendant, and plaintiff brings error.  Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Morris M. Cohn, for plaintiff in error.

T. C. McRae, W. V. Tompkins, and U. M. Rose, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

ADAMS, Circuit Judge. This was a suit on 11 promissory notes made by the defendant, the Ozan Lumber Company, a corporation of Arkansas, payable to the order of P. H. & F. M. Roots Company, a corporation of Indiana, and by the latter indorsed for value before maturity and delivered to plaintiff, the Union County National Bank, another corporation doing business in Indiana. The defense was that the notes were executed in the state of Arkansas in payment for a patented log loader sold by the Roots Company to the lumber company on credit; that they were not written upon a printed form showing upon their face that they were executed for that purpose and were, therefore, under the provisions of the statutes of Arkansas (Kirby's Dig. §§ 513–516), void. These sections of the statute, so far as necessary for our present consideration, are as follows:

"Sec. 513. Any vendor of any patented machine * * * when the said vendor of the same effects the sale of the same to any citizen of this state on a credit, and takes any character of negotiable instrument, in payment of the same, the said negotiable instrument shall be executed on a printed form, and show upon its face that it was executed in consideration of a patented machine, * * * and no person shall be considered an innocent holder of the same, though he may have given value for the same before maturity, and the maker thereof may make defense to the collection of the same in the hands of any holder of said negotiable instrument, and all such notes not showing on their face for what they were given shall be absolutely void. * * *

"Sec. 516. This act shall not apply to merchants and dealers who sell patented things in the usual course of business."

The case has an interesting history. At its first trial in the Circuit Court recovery was permitted on the ground that the statute invoked by the defendant was unconstitutional, in that it denied to manufacturers of patented articles the equal protection of the laws. 127 Fed. 206. The judgment of the Circuit Court was affirmed by this court on the ground that the statute improperly discriminated against patents and patented articles. 76 C. C. A. 218, 145 Fed. 344. The case then went by certiorari to the Supreme Court, where the statute was declared constitutional and valid, the judgment below reversed, and the cause remanded to the court below for a new trial. 207 U. S. 251, 28 Sup. Ct. 89, 52 L. Ed. 195. The plaintiff then amended its complaint, alleging that the Roots Company was a dealer in log loaders, that the notes were executed and delivered to it in payment for a log loader purchased by defendant from it as such dealer in the usual course of business, and, therefore, that it fell within the exception specified in section 516.

The defendant for its answer denied that the Roots Company was a dealer as alleged, and averred that it was a manufacturer, and that the log loader was manufactured and sold by it in the usual course of its business as such manufacturer and not otherwise. A jury was duly

waived and the cause tried to the court. Judgment followed for defendant, and plaintiff prosecutes error.

Prior to the filing of the amended complaint no contention had been made that the vendor of the log loader was a merchant or dealer within the meaning of the statute quoted. Nevertheless, that question is now an issue in the case and must be met. The proof was so harmonious and uncontradictory that both parties treated it as raising a question of law only; each requesting the court to declare in effect that as a matter of law on the evidence produced the judgment should be in its favor. The court refused to give the declaration requested by the plaintiff, but gave that requested by the defendant, in effect that the Roots Company was not a merchant or dealer, and that the notes sued on were, therefore, void. Plaintiff saved due exceptions to these rulings.

On the assumption that the evidence all taken together was not contradictory in substantial respects, the method pursued was a proper one for raising a question of law for review by an appellate court. Insurance Co. v. Folsom, 18 Wall. 237, 251, 21 L. Ed. 827; Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. 321, 28 L. Ed. 862; Ward v. Joslin, 186 U. S. 142, 147, 22 Sup. Ct. 807, 46 L. Ed. 1093; Keeley v. Ophir Hill Consol. Min. Co., 95 C. C. A. 96, 169 Fed. 598.

The decisive question before us is whether the vendor company was a merchant or trader and, therefore, within the exception of the statute, or whether it was a manufacturer only and, therefore, subject to the main provisions of the statute. If the determination of this question was dependent upon contradictory evidence and determinable by the preponderance of proof, the finding of the court under well-recognized rules of practice would be conclusive. Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co., 77 C. C. A. 601, 147 Fed. 457; Keeley v. Ophir Hill Consol. Min. Co., supra.

If, on the other hand, the testimony was substantially without conflict, a question was presented to the trial court, as we have already seen, to determine as a matter of law its legal significance and import.

The proof shows the following facts without substantial contradiction: That the business of the vendor company had for years consisted in the manufacturing of blowers, gas exhausters, and pumps on an extensive scale; that it had just begun manufacturing and selling log loaders, a patented device, under an agreement with the patentee whereby the latter received a certain royalty thereon; that the one delivered to the defendant was the eighteenth which it had manufactured; that the contract for its delivery was negotiated by a traveling salesman of the vendor company who called at defendant's place of business in Arkansas for that purpose; that the notes in suit were executed by the defendant payable to the order of the vendor and by it indorsed for value before maturity and delivered to the plaintiff; that they were not executed on a printed form and did not show upon their face that they were executed in consideration of a patented article; that the negotiations of the traveling salesman resulted in a written contract between the vendor and vendee company.

The contract was in the form of a proposition in writing made by the former and accepted by the latter company and was as follows:

"We propose to make and deliver, f. o. b. cars Connersville, Indiana, within fifteen (15) days from date of your acceptance, unless delayed by strikes, fires or manufacturing contingencies beyond our reasonable control, the hereinafter described machinery; One Standard Decker log loader, as per specifications attached. Price $4,600.00. Terms $475.00 cash, and eleven notes of $375.00 each, at 6 per cent., when set up and running; it being understood that if you are not ready to start and test said machinery at or within thirty days from shipment, then settlement to be made at the expiration of that time. Plans and erections: We will furnish foundation drawings free of charge, also ten days time of competent man to erect and start the within specified machinery, we pay his travelling expenses and board, you to prepare foundations as per our plans and you to furnish all laboring help. * * * The title to the machinery we furnish remains in the P. H. & F. M. Roots Company until the same has been fully paid for in cash. Any changes in this proposal must be in writing and attached hereto. There can be no understandings or agreements which are not expressed in this proposal."

The specifications referred to gave the exact size and dimensions of each element and part of the machine and specified with detail and precision their required quality and strength. They concluded thus:

"These specifications contemplate the building and furnishing a log loader complete, in which the workmanship and material are the best of every kind."

After the execution of the contract, the vendor company constructed the machine according to requirements of the specifications and loaded it upon the cars consigned to the vendee company as required by the contract. It does not appear that the vendor company had any store or warehouse in which it kept log loaders for sale, or that it had any supply of them on hand for sale, or that the one in question was shipped from any such warehouse or store to the defendant.

We think the facts conclusively show that the Roots Company in its transaction with the defendant dealt as a manufacturer and not as a merchant or dealer selling things in the usual course of business. The contract according to its terms was not one of sale at all. It did not purport to sell anything, but rather "to make and deliver" something. Its subject-matter was not in existence. The undertaking was to make a log loader of certain prescribed size, dimensions, material, and capacity to meet the requirements of the defendant. It said:

"We propose to make and deliver * * * the hereinafter described machinery * * * as per specifications attached. * * *"

The specifications, as the word indicates, described materials to be employed and the details of construction. In them it was said:

"These specifications contemplate the building and furnishing a log loader complete."

The machine had to be made, and when made and loaded upon the cars at Connersville, the place of business of the vendor, in Indiana, the delivery was complete. We do not think it would have occurred to learned counsel for defendant to claim that the Roots Company in this transaction was acting as a merchant or dealer within the meaning of the statute, except for the language of Mr. Justice Peckham in delivering the opinion of the Supreme Court in the case (207 U. S. 251, 256, 28 Sup. Ct. 89, 91, 52 L. Ed. 195). It was there said:

"The manufacturer of a patented article, who also sells it in the usual course of business in his store or factory, would probably come within the exception of section 4 (section 516, Id.). He may be none the less a dealer, selling in the usual course of his business, because he is also a manufacturer of the article dealt in."

We discover nothing in this language to support the contention of counsel. It seems very plain. The court merely announced the proposition that a manufacturer who produces articles and deposits them in his store or factory from which he sells them in the usual course of business would probably be a merchant and dealer within the meaning of section 516, notwithstanding the fact that he manufactured the articles dealt in. But how does that pronouncement aid the plaintiff in this case? As already seen, its assignor had no supply of log loaders on hand for sale. Neither is any course of business concerning such sales made to appear. On the contrary, the manufacturing of log loaders was outside the regular business of the Roots Company, and, so far as this record discloses, no disposition of them was ever made except upon orders to manufacture a desired machine according to specifications agreed upon between the contracting parties. It cannot escape observation that the learned justice did not say "the manufacturer of a patented article would probably come within the exception of section 516"; but he imposed a most significant qualification and limitation upon the word "manufacturer." It was only "such a manufacturer as sells in the usual course of business in his store or factory" that would be probably protected by the exception. The purpose obviously was to construe section 516 so as to protect such persons as manufactured patented articles who kept a supply on hand for sale and from time to time sold from that supply in the usual course of their business.

Counsel also lay stress upon the following words immediately following those already quoted in the opinion:

"Exceptional and rare cases, not arising out of the sale of patented things in the ordinary way, may be imagined where this general classification separating the merchants and dealers from the rest of the people might be regarded as not sufficiently comprehensive, because in such unforeseen, unusual, and exceptional cases the people affected by the statute ought, in strictness, to have been included in the exception."

It is urged that the Supreme Court meant by this language that the provision of section 516 would apply in all but unforeseen, unusual, and exceptional cases, and that the class excluded from the benefit of the exception would be insignificant. We cannot so interpret the language. It was obviously employed in answer to an inquiry propounded by the District Judge in his opinion (127 Fed. 206, 208) as follows:

"By the plain provisions of this act it is made to apply to all persons except 'merchants and dealers who sell patented things in the usual course of business.' How shall this act be reconciled with the last paragraph of the first section of the fourteenth article of the Constitution of the United States, which forbids in terms any state to 'deny to any person within its jurisdiction the equal protection of the laws?' How can the state, acting within this provision of the Constitution, protect by its laws 'merchants and dealers who sell patented things in the usual course of business,' and deny the

same protection to other persons; as, for instance, manufacturers of the same patented things who 'sell them in the usual course of business?'"

Mr. Justice Peckham, in answering the questions so propounded, made use of the language under consideration.

It is difficult to find in this language any support to the contention of counsel to the effect that the Supreme Court intended to announce the general proposition that the exception practically nullified the rule. That question was not before the court, and we cannot believe it was intended to be decided by the language referred to.

The words "merchants" and "dealers," according to common understanding, mean something different from the word "manufacturers." The former are generally employed to designate persons engaged in the business of buying and selling merchandise or other personal property in the usual course of trade; the latter to designate those engaged in the business of making or producing articles for use or sale. Webster and Century Dictionaries; Kidd v. Pearson, 128 U. S. 1, 20, 9 Sup. Ct. 6, 32 L. Ed. 346; United States v. E. C. Knight Co., 156 U. S. 1, 14, 15 Sup. Ct. 249, 39 L. Ed. 325; Kansas City v. Brewing Co., 98 Mo. App. 590, 73 S. W. 302. This common understanding of the meaning of the words is presumptively what Congress intended in using them. The last-cited case was one for the recovery of taxes in which the liability depended upon whether the defendant was a merchant or a manufacturer. The court, after reviewing the cases, said:

"It will be seen by these decisions that a manufacturer may or may not be a merchant within the meaning of the charter and the statute of the state. If he keeps at a store, stand, or other place, in stock, articles manufactured by him for sale in the ordinary course of trade, he is a merchant. If he only manufactures upon order, he is not a merchant."

Applying the criterion just mentioned to the facts of the present case, we conclude that the Roots Company was not a merchant or dealer within the meaning of section 516, but was a manufacturer only, and as such was subject to the conditions imposed by section 513.

The Circuit Court committed no error in its rulings to that effect. Its judgment is, accordingly, affirmed.

HOOK, Circuit Judge (dissenting). When this case was here before, we held the Arkansas statute invalid because it appeared to be exclusively directed against a right conferred by the patent laws of the United States enacted pursuant to the Constitution. It relates exclusively to patented things and does not proceed upon any consideration of their material character or the use for which they are designed. The Arkansas statute would not apply to sales of exactly the same kind of property if it were not patented; and likewise if a patent thereon once obtained had expired. 76 C. C. A. 218, 145 Fed. 344. The Supreme Court, however, upheld the statute as a permissible police regulation in view of the frequency of fraud and imposition in the sale of patented articles. The fraudulent practices of itinerant venders was referred to as being almost proverbial. 207 U. S. 251, 28 Sup. Ct. 89, 52 L. Ed. 195. In other words, it was held the statute

was directed, not at the right under the patent laws, but at the evil commonly attending the sale of patented articles in the particular way indicated. I refer to these different views merely for their bearing upon the application of the statute—upon the question whether the facts developed at the second trial bring the case within the special purpose of its enactment as construed by the Supreme Court. The consideration for the notes that are held void because not executed on the prescribed form was a log-loading apparatus manufactured, sold, and installed according to extensive detailed plans and specifications contained in a written contract. The Roots Company, which made and sold it, was not a peripatetic or itinerant vender, but was an old manufacturing concern with a long-established business and a fixed abode; and what it did was in the usual course of its business. Again, the log-loading apparatus was not a mere patented article or thing like those in the peddling or vending of which there is frequently fraud and overreaching. It was a comprehensive, permanent structure erected in part upon foundations, with fully equipped boiler, engine, car body, trucks, rails, water tank, pump, and various other appliances. The transaction was no more within the particular evil, to correct which the statute was enacted, than the construction under contract of a sawmill, a flouring mill, a power plant of an electric light or street railway company, or the heating system of a hotel or office building, in which cases it would be rare indeed if there were not considerable machinery covered by letters patent of the United States. Transactions of the kind mentioned are of such frequency and importance in the business world that it cannot be said they are exceptional or rare and may therefore have escaped the attention of the legislative body. Nor can it be conceived that the Legislature could put them in a class for discriminatory legislation; there would be no discernible reason for it arising from the incident of a patent. It seems to me quite clear that regardless of specified exceptions in the statute it does not apply to such cases.

"It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act." Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226.

The case cited well illustrates the danger of adhering closely to the written text and ignoring the spirit and purpose of the enactment. An act of Congress prohibited assistance or encouragement of immigration of aliens under contract "to perform labor or service of any kind." The Trinity Church Corporation contracted with an alien residing in England to remove to New York and enter its service as rector and pastor. The alien having come, the government sued to recover the penalty, and the strength of its case is shown by the following observations of the court:

"It must be conceded that the act of the corporation is within the letter of this section, for the relation of rector to his church is one of service, and implies labor on the one side with compensation on the other. Not only are the general words 'labor' and 'service' both used, but also, as it were to guard against any narrow interpretation and emphasize a breadth of meaning, to them is added 'of any kind'; and, further, as noticed by the Circuit Judge in his opinion, the fifth section, which makes specific exceptions, among them professional actors, artists, lecturers, singers, and domestic servants, strengthens the idea that every other kind of labor and service was intended to be reached by the first section."

The court, however, held that Congress, having a definite evil in view, used general terms for the purpose of reaching all its phases; and, though the general language employed was broad enough to cover the case, it could not reasonably be said Congress so intended.

To adapt the Arkansas statute to the evil attending the sale of patented articles in the particular way referred to, and also to indicate its limitations, it was provided that it should "not apply to merchants and dealers who sell patented things in the usual course of business." Was the Roots Company a merchant or dealer within the meaning of the act? It may be admitted that construing those words narrowly, or even giving them their ordinary meaning, it was not a merchant or dealer. For instance, it might have been a manufacturer as distinguished from a merchant within a municipal law imposing license taxes on merchants. 93 Mo. App. 590.[1] But were they employed in a narrow or ordinary sense? It is elementary that the meaning of words in a statute is very largely controlled by the fundamental intent of the statute itself. Words of comprehensive import may be restrained to that intent, and, on the other hand, words narrow in their literal sense may be enlarged and extended. Their particular signification in a legislative act, as in a conventional writing of private individuals, is determined by the context and the discernible purpose of those who put it forth. Words have no such absolute meaning that they cannot derive from their environment a different signification from that commonly given them when standing alone or in different company. Thus, a "locomotive engine," which is rarely regarded as a railroad car, has been held to be a "car" within the safety appliance act (Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363), and, as above shown, the labor and service of a rector and pastor of a church are not "labor or service of any kind" within the alien contract labor law. The ordinary term "debt" used in the legal tender acts may not embrace taxes imposed by state authority (Lane County v. Oregon, 7 Wall. 71, 19 L. Ed. 101); nor as commonly used in law does it include taxes imposed by one sovereignty when sued on in another (Crabtree v. Madden, 4 C. C. A. 408, 54 Fed. 426), yet it may do so when the suit is in the proper forum (Dollar Sav. Bank v. United States, 19 Wall. 227, 22 L. Ed. 80). In England half a century ago an uncertified bankrupt without an occupation was properly styled a gentleman (12 C. B. N. S. 730), though in these days and in this country he might be very far from meriting the appellation. Illustrations along this line might be multiplied indefinitely. The Supreme Court observed when the case at bar was before it that one might be none the less a dealer

[1] 73 S. W. 302.

selling in the usual course of business, though also a manufacturer of the article dealt in.

The Legislature of Arkansas endeavored to classify and exempt from the operation of the statute all persons dealing in patented articles whose methods of business were commonly regarded as unobjectionable or at least not generally attended by the evil practices it sought to correct. It denominated that class merchants and dealers selling in the usual course of business; and, bearing in mind the legislative intent, I think it quite clear the Roots Company falls within it.